Opinion of the court, by
Judge Sherman:
The questions made upon the demurrer to the bill of the complainant are: 1. Do the facts stated in the bill furnish a'ny ground to interfere with the judgment at law sought to be enjoined ? 2. If the complainant is entitled to relief, whether a court of chancery is the proper tribunal to afford it?
Upon the first question, the defendant contends that the complainant is bound by the act of the attorney, although unauthorized, and 1 Salk. 86-88; 1 Bibb, 89; 6 Mod. 16, and 5 ¡Mod. 205, are cited in support of this proposition. These authorities show the liability of an attorney to the person who has sustained damages through their neglect or misconduct; and some of them recognize the doctrine that his acts are conclusive upon the person for whom he has appeared, unless the attorney is insolvent, or in suspicious circumstances. They appear to be founded upon reasons of policy, that, as the attorney is a sworn officer of court, he is himself responsible to the person for whom he appears, and as the opposite party is in no fault, and has no adequate means of ascertaining the authority of the attorney, he ought not to be delayed or iujured by the unauthorized act of such attorney, if he is *of sufficient ability to respond in damages to the person for whom he undertook to appear. This reasoning is certainly plausible, and worthy of some consideration, but does not furnish any sufficient ground *489 why one of the most obvious and well-settled principles of law, as well as justice, should be departed from—that no person is to be bound by the act of a stranger, in whom he has vested no authority, or reposed any confidence, and over whom he can exercise no control. The admission and oath of an attorney is for the safety and advantage of the suitor, but does not of itself authorize him to appear in any cause. His authority to appear is essentially derived from the party, and dependent upon him for its continuance; and, although it is not the practice of our courts, in ordinary cases, to require the attorney to produce either a warrant or other authority from the suitor, before he is permitted to appear, yet its production may be, and, under certain circumstances, undoubtedly would be, required by the court. Courts act on the presumption that the attorney is authorized by the party, and it is in virtue of this authority that he is permitted to appear and prosecute, or defend, and not merely because he is an officer of court, admitted by them, and sworn to discharge his duty.
There are many officers in our country, admitted to act as such, and sworn to a faithful discharge of their duties, by public authority, who derive their power, in each particular case, from the individual for whom they act. The office oí an auctioneer is of this kind. They are appointed, commissioned, and sworn by the officers of government, and nó one will pretend that they could sell or transfer the property of an individual without or against his consent, and yet any argument derived from considerations of public policy or convenience in favor of considering the acts of an unauthorized attorney conclusive upon the suitor, applies with equal force, in so considering the acts of an unauthorized auctioneer, upon the persons interested. ■
The mischief that might follow from holding that the acts of the unauthorized attorney are conclusive upon the person for whom he appears, would induce the court to hesitate long before they would establish such a rule. It would, in some degree, subject the property of every individual in the community to the mistake or malice of a particular class of men.
*If the doctrine contended for by the defendant was now fully recognized by the English courts—and it appears, from the cases cited, to have been at one time—it could not long have remained a rule of decision, as we find a number of cases, in their reports, where parties have obtained relief against the acts of un *490 authorized attorneys. In the ease of Robson v. Eaton, 1 Term, 62, Lord Mansfield expressly states the doctrine, that a party to a suit is not bound by the act of an attorney not employed by him ; and decided that when, as in that case, the defendant had paid money to the attorney, who had brought a former suit and appeared for the plaintiff, he was liable to pay it over again if it appeared the attorney was not employed by the plaintiff. In Denton v. Noyes, 6 Johns. 298, the Supreme Court of Now York hold, that judgment obtained against the defendant, not served with process, in consequence of the appearance of an unauthorized attorney, was not conclusive upon the defendant; and the proceedings were reversed and ho was permitted to make defense.
Whatever might formerly have been the rule of the English courts, their practice would now seem to be not to consider the act of an attorney conclusively binding unless he is employed by the person for whom he appears, 3 Shaw, 166; Archb. Plead.; and the decisions of the courts in the United States, when the point has been made, have been in accordance with such practice, so far as they have fallen under my observation. Plaintiffs may sometimes suffer inconvenience by the appearance of an unauthorized attorney for the defendant; but courts, to avoid this evil, ought not to run into the opposite extreme of subjecting the interest and rights of such defendant to the uncontrolled acts of a stranger neither employed nor trusted by him. In affording a remedy to a defendant so situated, courts will be careful to protect the plaintiff in any right he may have acquired, and interfere only so far with the judgment or other proceedings as may be necessary to afford the defendant an opportunity of making defense.
The second ground of demurrer to this bill is, that whatever relief the complainant is entitled to should have been sought in the court rendering the judgment and not in chancery.
It is an unquestioned principle, that a court of equity will not interfere when the party seeking their aid can have the *same relief in law as in equity; and the court are of opinion that this principle applies to and must govern this case.
There is nothing in the .bill showing that the complainant could not obtain the same relief upon motion to the court rendering the judgment that ho now seeks by his bill in equity. The ground taken in the bill for the interference of a court of equity is, that the complainant was not served with process in the suit at law, *491 and that an attorney of the court, without his knowledge, or any authority from him, appeared for him, pleaded, and went to trial; whereupon a verdict and judgment was obtained against him. There is no pretense of any fraud or collusion on the part’ of the defendant, the plaintiff at law, that he had any knowledge of the attorney’s not being authorized, or that the trial, on his part, was not fairly and properly conducted. If, upon these facts being shown to the court rendering the judgment, they were competent to set it aside or suspend it, and let the .complainant, the defendant at law, in to make defense, he had complete and adequate remedy at law, and chancery will not entertain jurisdiction. And this court does not doubt but that it was fully competent for the court at law to afford the complainant, upon motion, all the relief he could obtain in a court of equity. The jurisdiction of courts of law, in setting aside judgments improperly obtained, or suspending their operation for a time, has been too long exercised, is too reasonable in itself, and attended with too many beneficial effects, to be now seriously questioned. It has become one of the regular, plain, and accustomed remedies of a court of law to afford full and adequate relief against a judgment.irregularly or improperly obtained, when there has been no fault or negligence on the part of the judgment debtor. In the case of Denton v. Noyes, before cited, the Supremo Court of New York, in a case very similar in its principal features to the one now under consideration, suspended, on motion, the operation of the judgment and permitted the defendant to plead, leaving the judgment to stand as a security for the plaintiff, in case ho should, upon a future trial, obtain a verdict. They proceeded upon the principle that now almost uniformly governs courts in giving relief in cases of this kind, that of doing right and justice between the parties. The relief which is now given by courts of law, upon motion, is equitable in its ^-'character, extended upon equitable terms, and so framed us to protect the rights of one party without sacrificing or jeopardizing those of the other. It may be afforded in the court rendering the judgment with more facility and more certainty of doing justice than in a distinct tribunal, and the party injured can then obtain all the relief he is justly entitled to without subjecting the other party, against whom there is no complaint, but having, as ho supposed, in due course of law, obtained a judgment in his favor, to the delay and expense of a chancery proceeding, *492 There may be cases where, from the fraud or collusion of the party obtaining the judgment, or from peculiar circumstances, it may be proper that a court of equity should entertain jurisdiction and afford relief; but there is nothing in this bill showing that the complainant has not complete remedy at law by application to the court rendering the judgment.
It has been contended, by the counsel for the complainant, that the principles recognized by this court, in the case of Atkinson v. Commissioners of Pickaway County, 1 Ohio, 375, would prohibit the court of common pleas from either setting aside or suspending the judgment previously rendered by them, unless it was done at the term it was rendered. This court decided in that case that the court of common pleas could not, at a term subsequent to the rendition of a judgment, amend it in a substantial and material part. In the report of that ease, the reasons upon which the decision was founded are not very fully stated. For some years anterior to 1823, courts were expressly authorized by statute to amend their judgments. At the revision of 1824, this provision was omitted by the legislature, and as the court believed, intentionally, and not from inadvertence, as the bill proposed bjr the committee of revision, and sanctioned by both' branches of the legislature, providing for the amendment of judicial proceedings, was the same as the former law, with the exception that the power to amend judgments was omitted. The power of courts to amend their records, in matters of substance, after the term in which final judgment was rendered, is not a part of the ancient common law, nor were the court aware that the courts of any of the United States exercised this power over the records of their judgments, unless given them by statute. Courts have supplied *omissions or defects in their records by entries of judgments, or other proceedings nunc pro tunc, but this bears but little analogy to amending the record of a judgment perfect on its face, so as to make its operation and effect essentially different from what it originally was.
Our peculiar system of jurisprudence seemed to require that the court of common pleas should not possess the power of amending judgments in matters of substance, after the term in which they were rendered. It has been the uniform policy of our laws, to give to a party dissatisfied with the judgment of the court of common pleas, a privilege of appealing to the Supreme Court within a short *493 time after the term, and thereby vacate the judgment and have another trial upon the merits. But if a judgment with which the party was satisfied may, after the period for his appealing has elasped, be amended in substance so as greatly to increase his liability, as was the ease cited from 1 Ohio, 375, he will be bound by it, without the benefit of an appeal, or a second investigation, by a superior tribunal. It is the same as respects writs of error. A judgment may be rendered in the common pleas against a defendant and the- proceedings evidently be erroneous, and yet the party consider it of too little importance to sue out a writ of error within the time limited by statue, and if, after the expiration of the period, the judgment may be so amended as greatly to enhance the amount, tbe party would sustain serious injury, without any remedy either by writ of error or appeal. But these objections do not exist, nor can these inconveniences ever result from the court of common pleas exercising jurisdiction in setting aside, for irregularity, a judgment previously rendered. The cause will then stand as if no judgment had ever been entered ; the issue made by the parties will be tried by the proper forum; the judgment of the court given, and either party can avail himself of his right of appeal, or writ of error, as he may be advised. A party can not, by this course, be deprived of any right or privilege granted him by law, the delay and additional expense being the only loss or inconveniences he can suffer. The court are of opinion, that the complainant had adequate remedy at law, and for this reason, the demurrer must be sustained.