## VANDERLIP, ESTATE OF, In Re.

Probate Court, Montgomery County.

No. 95936. Decided October 22, 1943.

Munger & Kennedy, Dayton, for applicant.

Carl R. Johnson, Columbus, for William S. Evatt, Tax Commissioner.

## OPINION

By WISEMAN, J.

This matter comes on to be heard on the sworn application of Eugene G. Kennedy, executor under the will of Rose Vanderlip, deceased, for an order modifying the former order of this court determining the inheritance tax on that part of the estate distributed to Arthur W. Meyer, residuary legatee and devisee under her will, and for an order for a refund of overpaid inheritance taxes.

Due notice was given to the Tax Commission, the matter was properly heard, and the facts essential to the issues are undisputed.

At the time of the decedent's death, there was found among her effects a pass book issued to her by the West Side Building & Loan Company, showing a running stock account in that institution of the par value of $7,000. This account was listed as an asset in the inventory, and was appraised at $3,990; and was included as an asset

in the tax proceeding. As a matter of fact, this account did not exist; it had been withdrawn by the decedent many years prior to her death. It is conceded that this account was inventoried and appraised as an asset of the estate of the decedent, and included as an asset of said estate in arriving at the value of the succession of the residuary legatee and devisee, through a **mistake of fact.**

By including this account as part of the assets of said estate, an overpayment of inheritance tax in the amount of $191.52 resulted. The executor prays the court to modify its former order determining the inheritance tax, and to order a refund of the overpayment as provided by law. The order determining the tax was made on December 18, 1942; the tax was paid on June 16, 1943; the application before the court was filed after term, to-wit, on July 13, 1943.

The right to a refund is controlled by §5339, GC, which in part provides as follows:

"If any debts shall be proven against the general estate after the determination of inheritance tax has been made, an application for modification of such order of determination may be filed. Of this application and of the hearing thereof the tax commission shall have notice * * *.

"Where it shall be shown to the satisfaction of the probate court that deductions for debts were erroneously allowed, or that assets exist which were not taken into consideration when tax was determined, such court may enter an order assessing the taxes upon the amount wrongfully or erroneously deducted or upon such omitted assets."

Does this petitioner place himself within the provisions of this statute? It will be observed that the language of the statute restricts the right to a refund to those cases wherein debts have been proven against the estate which were not deducted in the determination of the tax, or a right to a modification of the former order to those cases wherein debts were allowed which should not have been allowed, or where property was omitted which should have been included. The language of the statute does not expressly provide for a situation where assets were included which should not have been included.

At the outset, the petitioner is confronted with the principle of law that taxation laws are strictly construed in favor of the state. Unless the taxpayer can place himself within the express provisions of the statute, which may restrict the relief granted to the taxpayer, he is without a remedy under the taxation laws. See **Tax Commission v Paxson, 118 Oh St 36, 41.**

In support of the contention that the refund should be ordered, the case of **State ex v Mong, 130 Oh St 483, 5 OO 101,** is cited. In that case, a writ of mandamus was granted commanding the auditor

of Summit county to issue a warrant on the county treasurer for a refund of overpaid inheritance taxes. The one-half of the refund chargeable to the State of Ohio had been repaid. The action related to the portion chargeable to the Village of Hudson, the decedent's place of residence. The court in its opinion held:

"The intent of the inheritance tax law is that inheritance taxes shall be paid promptly with right of refund of such an amount thereof as may later lawfully appear to be overpaid. The tax is computed on the net balance and often after payment further deductions come to light which may be cared for by refund."

There is nothing in that opinion which indicates how the overpayment of taxes happened to be made. The inference is left that other deductions came to light which reduced the amount of the tax. If this is correct, the applicant for refund was placed directly within the express provisions of §5339, GC. The real question in that case was whether a political subdivision could be required to refund taxes which had already been distributed to it. The court on that phase of the case held:

"There is no vested right to inheritance taxes which have been paid and distributed to the state or a subdivison thereof, such as prevents a refund of payments in excess of those warranted by law."

The court found that the relator was entitled to a writ of mandamus requiring the Village of Hudson to refund its portion of the overpaid taxes. It is observed that the holding of the court is rather sweeping in its application and content, which lends force to the contention of the executor in the instant case that since a political subdivision has no vested right to inheritance taxes paid "in excess of those warranted by law," there is sufficient authority for this court to order a refund of inheritance taxes paid on assets which did not exist and which were included as assets in the tax proceedings through a **mistake of fact.** If the facts in the instant case fell within the express provisions of §5339 GC, the contention would be wholly tenable. However, the applicant in the case at bar requests a modification of the former order and asks for a refund on grounds not provided for in §5339 GC. Hence, the executor must look elsewhere for a remedy. The language used by the court in State ex v Mong, supra, indicates that the court may go far to afford a remedy to a taxpayer who has paid inheritance taxes under a mistake of fact. In the case of **Belle Center v Roundhead Township, 99 Oh St 50,** on page 54 the court holds that "The right to succeed to the estate is the thing that is taxed."

However, the court is confronted with four Ohio cases in which relief was denied the taxpayer. In the case of **Exrs. of Long v State, 21 Oh Ap 412,** it was held:

"On application for refunder of inheritance tax, made after term in which it was assessed, only question is whether judgment of probate court is void, where no exceptions had been taken, and no proceedings on error or appeal prosecuted to such judgment.

"Voluntary payment of inheritance tax without protest or objection cannot be recovered back, even though it was illegally assessed."

In this case the taxpayer did not take advantage of a legal right to an exemption from the payment of an inheritance tax under the reciprocity laws with the State of New York. The court had before it the question as to whether the applicant was given any statutory authority to a refund. The court held that inasmuch as none of the parties took exceptions to the finding of the probate court or the assessment of the tax, and no error proceedings or appeal was prosecuted to the finding and judgment of the probate court, the probate court having jurisdiction, under the constitution and the statutes of the State of Ohio, over the subject matter, such judgment was not void, but binding on the parties, and the payment of the tax was a voluntary payment which could not be recovered.

That case is distinguishable from the case at bar in that the taxpayer sought relief from his failure to claim a legal right. Is this not in its essence a mistake of law rather than a mistake of fact? A mistake of law occurs when a party knows the state of facts, but is ignorant of the legal consequences. 10 R. C. L., p. 294; 34 Am. Jur., p. 220. It is a matter of elementary law that relief from the consequences of a mistake of law can be given only through an appeal (formerly error or appeal). Furthermore, that case arose before the Probate Code was enacted which confers equity powers on the probate court and, therefore, the court was confined to the statutory remedy.

That court rested its opinion on the case of **Wilson v Pelton, 40 Oh St, 306,** in which it was held:

"An action against the county treasurer * * * to recover back taxes paid, which were illegally assessed, cannot be maintained when the taxes were paid voluntarily and without protest or objection."

In that case a civil action was brought against the county treasurer to recover personal property taxes paid by the taxpayer, which were illegally assessed. The plaintiff rested his case on the general law rather than the statutory right of recovery. The case can be distinguished from the instant case in that it did not involve the judgment or order of the court based upon a mistake of fact, but falls in that category of cases wherein a recovery is denied to a taxpayer who has paid taxes voluntarily, and without protest or objection.

In both of these cases the court cites with approval and rests its opinion on McCrickart v Pittsburgh, 88 Pa. St., 133, which held that in absence of mistake or fraud, a voluntary payment of taxes cannot be recovered back.

The court in the case of In re Estate of Atley, 36 N. P. (N.S.), 362, held:

"The right to a refund, after inheritance taxes have been paid, is fixed by §5339 GC, and applies only (to) debts that have been proven against the estate after the taxes have been paid."

The precise question in the case at bar was not raised in that case. The real issue in that case was whether the applicant was entitled to a refund based upon an over-valuation of real estate. The court held that the appraised value of the real estate, rather than the sale value, is taken as the measure of value in assessing the inheritance tax.

The case of Mayfield Heights v Gates Mills, 46 Oh Ap 349, can be distinguished on the ground that the probate court, prior to 1932, had no authority to change or modify its orders after term. In that case a separate action was brought in the common pleas court, by the village which was entitled to the tax against the village which received the tax, and the court held that the action could not be maintained for the reason that the Probate Court lacked jurisdiction to modify its former order determining the tax, and that the subsequent order was void.

Is the petitioner afforded any other remedy than that provided in §5339 GC? It is obvious that no relief can be granted the petitioner until the former order assessing the tax is vacated or modified. The application for modification of the former order and for a refund, was filed after term. If the petitioner has any remedy in this court, it must lie in the field of the general law controlling the authority of the Probate Court to vacate or modify its orders or judgments after term. Looking to the substance rather than the form of the pleading, the court considers the sworn application in the nature of a petition to vacate or modify a judgment or order after term. By what authority and on what ground can the Probate Court vacate or modify its orders or judgments after term? Section 10501-17 GC, provides:

"The probate court shall have the same power as the common pleas court to vacate or modify its order or judgments."

The authority of the Common Pleas Court to vacate or modify its orders or judgments after term is controlled by §11631 GC, which lists the grounds on which an order or judgment may be vacated or modified. In Vol. 23, O. Jur., Sec. 1064, p. 1175, the power of the Common Pleas Court to vacate or modify its orders or judgments after term is stated as follows:

"* * * However, one of the statutory grounds must exist for the vacation or suspension of a judgment at a subsequent term of court."

In §1128, p. 1221, of the same work, it is stated that the Probate Court has the same authority as the Common Pleas Court to vacate or modify its orders or judgments after term, as follows:

"It is expressly provided by statute that the probate court shall have the same power as the common pleas court to vacate or modify its judgments, and that the provisions of the chapter relating to relief after judgments 'of the common pleas court shall apply to the probate court so far as they may be applicable to their judgments."

The text writer rests this statement on the express provisions of §10501-17 GC, and §10501-18, GC, with respect to the terms of the probate court and, also, §11643 GC, which provides that the relief which the Court of Common Pleas may give after term shall apply to the "probate court, so far as they may be applicable to their judgments or final orders."

In the case of **In re Trusteeship of Wilson, 32 N. P. (N.S.), 497,** it was held:

"The power given the probate court to vacate or modify its orders after term in the new probate code can be exercised only upon some of the causes set forth in §11631, GC."

The Probate Court, therefore, has the same statutory authority as the Common Pleas Court to vacate or modify its █ orders or judgments after term, on one of the grounds mentioned in §11631 GC.

In the case at bar, the order against which relief is sought was made through a **mistake of fact.** Does such a mistake of fact fall within the provisions of ¶3 of §11631 GC, which provides for relief "for a mistake, neglect, or omission of the clerk or irregularity in obtaining a judgment or order"? Was the mistake in the instant case a "mistake, neglect or omission of the clerk" within the meaning of the statute? In **Vol. 23, O. Jur., Sec. 1074, p. 1183,** it is stated:

"A mistake by the clerk within the meaning of this statute has been held to take place when there is an entry by the clerk or a judgment which in fact had never been rendered, or of a judgment different from that actually rendered, although the clerk was induced to make such entry by following the notes of the judge on his minutes, which were also made by mistake."

The text writer refers to the case of **Elliott v Plattor, 43 Oh St, 198,** wherein a mistake was made by the clerk in making an incorrect entry on the journal by entering a judgment which had not in

fact been rendered by the court. That case can be distinguished from the facts in the case at bar. In the case at bar, the executor presented mistaken facts to the court and the court, acting upon that mistaken set of facts, rendered the judgment which it intended to render. The clerk correctly entered the judgment which was rendered by the court. The court concludes that the petitioner is not afforded a remedy under the provisions of §11631, GC.

Does the petitioner have any other remedy? It is contended that since the mistake which was made in this case was an honest mistake of fact, the State of Ohio and the City of Dayton, the political subdivision in which the tax accrued, should not be enriched at the expense of the taxpayer, and that the Probate Court, in justice and in equity, should grant relief. It is urged with much force that neither the constitutional provision (Art XII, Sec. 7) nor the legislative enactment (Secs. 5331 to 5348-16, GC) contemplates assessing a succession tax on property which did not exist and to which no beneficial interest attached in favor of a distributee.

Since there is no adequate remedy at law, can the petitioner be granted any relief in equity? It has been held that the Probate Court may grant relief on equitable as well as statutory grounds. In **Abicht, Exr. v O'Donnell, 52 Oh Ap, 513, 6 OO 462,** it was held:

"A probate court can, by virtue of §10501-17, GC, vacate or modify its orders and judgments the same as the common pleas court, and as its jurisdiction in that respect is not limited either by the constitution or legislative enactment to statutory grounds only, such jurisdiction includes **equitable grounds** as well."

In that case the Probate Court had settled an account in June, 1932. A petition was filed to open up the account in January, 1935. It was contended that the Probate Court is a court of limited jurisdiction, and had no power to open up its judgments except as may be authorized under the statute and, further, that the Probate Court does not have original equity jurisdiction and whenever it is sought to set aside the judgment of the Probate Court on equitable grounds such action must be brought in the Common Pleas Court. Judge Barnes, on page 515, held:

"That probate courts are not courts of general jurisdiction is well recognized, and no authority is needed in support of the statement. Their jurisdiction is such and only such as is conferred upon them by constitution or statute, with such auxiliary and incidental powers as are necessary and proper to carry into effect those expressly granted."

The court, in commenting on the constitutional provision (Art. IV, Sec. 8) granting to the Probate Courts "such other jurisdiction, in any county, or counties, as may be provided by law," held:

"The last phrase, 'as may be provided by law', as contained in

the Constitution, at once discloses that the probate court has capacity for receiving jurisdiction as great as that of the court of common pleas. In fact it has been held that the Legislature may confer upon the probate court any jurisdiction that it sees fit to grant.

"The section of the Constitution conferring jurisdiction on the common pleas court is no more comprehensive than the constitutional provision relating to probate courts, but the Legislature in its enactments has given general jurisdiction to the former in civil and criminal actions unless restricted by other legislation. In order to determine the issuable question in the instant case we searched the Code for legislation pertinent to the inquiry."

The court then cites sections of the code relative to the settlement of accounts of fiduciaries, and also §10501-17, GC, herein referred to, which the court discussed as follows:

"This language is all inclusive, and by its terms would not limit to statutory grounds unless under the provisions of the Constitution or other legislative enactments a restricted application must be given.

"We find no limitation under the provisions of the Constitution. As heretofore stated, the Constitution confers the right upon the Legislature to grant unlimited jurisdiction to the probate court.

"We know of no legislation by which the all-inclusive language of §10501-17, supra, is limited to statutory grounds for vacation or modification of its orders and judgments. Prior to the adoption of §10501-17, GC, effective January 1, 1932, the probate court had no power to vacate or modify its orders or judgments. Under the prior law the common pleas court in a proper case had such power. * * * (Cases cited)

"The exercise of this jurisdiction by the court of common pleas was by virtue of its general equity powers. Under the limited jurisdiction of the probate court it had no original equity jurisdiction; not because under the Constitution such might not have been granted, but for the sole reason that the Legislature had not so legislated. Neither the Constitution nor the legislation preempts equity jurisdiction to the common pleas court. Whenever and wherever the Legislature desires to confer equity jurisdiction upon the probate court it has the power so to do."

Further on, on page 519, in discussing the new grant of power under the probate code, the court say:

"Section 10501-17, GC, supra, granting the power to probate courts of rights to vacate or modify its orders or judgments, the same as common pleas courts, does include all statutory rights now given to the common pleas court, and we think goes further and includes similar inherent rights heretofore exercised by common pleas courts to set aside their orders or judgments on equitable grounds. The principle of law is so well established as to require

no citation of authorities that courts of common pleas have always had inherent right to set aside their orders and judgments upon the ground of fraud; that such vacation under favor of statute is merely cumulative of such chancery jurisdiction."

The court then cites §10501-53, GC, which confers jurisdiction on the Probate Court in certain specific matters; the last paragraph of which reads as follows:

"Probate court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute."

The court, in commenting on the effect of this statute, on page 520 say:

"This is an added provision definitely granting equity power to the probate court on all matters properly before the court."

In the case which the court has just discussed, relief was granted after term on the ground of fraud.

In **Amrine v Gabriel, 67 Oh Ap, 37, 59, 14 OO 447,** the court discusses the effect of the last paragraph of §10501-53 GC, and on page 455 say:

"This provision clarifies the matter of the jurisdiction of the probate court at law and in equity and applies to the jurisdiction of the court rules hereinbefore mentioned which in the absence of statutes otherwise expressly providing, are applicable to courts having general jurisdiction over the subject matter."

Further in the opinion the court say:

"The probate court, under the general principles of law applicable to courts exercising a similar jurisdiction, and the above quoted provisions of §10501-53 GC, has plenary power at law and in equity to dispose of any matters properly before the court unless the power is expressly otherwise limited or denied by statute."

On page 456, in discussing the effect of §10501-17 GC, the court say:

"It also extends to the probate court, control of its own orders and judgments after term upon **equitable grounds** as well as statutory grounds."

A very interesting case arose in the Probate Court of Summit county, which was finally decided by the Court of Appeals of that

county on March 17, 1941, reported as **Hooffstetter v Adams, 67 Oh Ap 21, 21 OO 70.** A petition was filed in the Probate Court predicated on fraud and collusion between an heir and the administrator, to set aside a judgment of that court which deprived a creditor of the heir of his right to proceed against the property of such heir. The question arose as to the jurisdictional right of the Probate Court to entertain such a proceeding. The petition to set aside the ex parte order was filed two years after the order had been entered. The Court of Appeals discusses at length the equity jurisdiction of the Probate Court, and considers the constitutional jurisdiction of said court. (**Art. IV, Sec. 8**), and also the last paragraph of §10501-53 **GC.** The court held that the Probate Court is not a court of general jurisdiction, but that the legislature may confer upon it any jurisdiction not in conflict with the constitutional grant of authority. The court held that the last paragraph of §10501-53 confers on the Probate Court a specific, limited grant of equity jurisdiction "in all matters properly before the court."

The court then directs its attention to the question as to whether the petition filed was "properly before the court." The court discusses the effect of §§10501-17 and 10501-53 **GC,** and on page 74 (Ohio Opinions), holds:

"An analysis of the foregoing code sections in the light of the constitution directs the conclusion that there is vested in the probate court the same jurisdiction, **not only under the statutes but in equity,** to vacate or modify its own orders or judgments as is vested in the common pleas to vacate its own orders.

"The specific grant of power in §§10501-53 and 10501-17, **GC,** does not grant general equity jurisdiction to the probate court. The equity jurisdiction in that respect is confined to those matters properly before it and not otherwise limited or denied by statute. The general principles of law applicable to the common pleas court, a court of general jurisdiction in law and equity, are therefore applicable to the jurisdictional questions arising in the case at bar.

"The statutes of Ohio specifically provide grounds for the vacation of judgments in the common pleas court which now by virtue of other statutes equally apply to the probate court. These remedies, however, which are set out in §11631 **GC,** are not exclusive but are cumulative. * * * (Cases cited). The equitable powers vested in the common pleas court to set aside and vacate its orders or judgments for fraud are now by virtue of the above-mentioned provisions of the probate code likewise vested in the probate court in proceedings to vacate its judgments and orders, on the ground of fraud.

"Neither Section 11631, **GC,** heretofore mentioned, nor §11640 **GC,** which latter section provides a time limitation for the bringing of actions, has a controlling effect where the proceedings are in equity for the purpose of impeaching a judgment for fraud."

The court then cites authorities in support of the principle of law that courts vested with equitable jurisdiction possess the inherent power to control their proceedings and judgments to prevent fraud or injustice. On page 75 the court concludes as follows:

"It is therefore our conclusion that a judgment creditor of a person who is not a debtor of an estate, even though such judgment creditor was not a party to the proceedings in the administration of such estate, can invoke the jurisdiction of the probate court in a proceeding to set aside a former order of such court, when he charges that the administrator entered into a conspiracy with his (the creditor's) judgment debtor for the purpose of fraudulently aiding such judgment debtor to transfer to the estate, his distributive share of the estate and other property, in defraud of his creditors, and in pursuance of such conspiracy obtains ex parte the approval of such fraudulent transaction by the probate court."

The court held that such a proceeding was "properly before the court," and sustained the judgment of the Probate and Common Pleas Courts in setting aside the former order.

In Freeman on Judgments (5th Ed.) page 432, a statement is made as follows:

"Independent of statutory provisions and notwithstanding the general rule limiting the court's authority over judgments to the term at which they were rendered, it has power to correct nonjudicial mistakes in its proceedings, and may annul within a reasonable time, orders and judgments inadvertently or improvidently made. Where the court has been deceived or is laboring under a mistake or misapprehension as to the state of the record or as to the existence of other extrinsic facts upon which its action is predicated, it may vacate the judgment which it would not otherwise have made."

And on page 534:

"As we have already seen in the discussions of the grounds of relief, statutes providing for relief upon designated grounds do not deprive the courts of their common law or inherent power to vacate judgments on recognized grounds."

In 34 C. Jur., p. 435, it is stated that statutes controlling the power of the court to vacate or modify its orders or judgments after term are cumulative and do not deprive the court of the exercise of its equity powers.

It is interesting to note that even prior to the enactment of the Probate Code, the Supreme Court held that the Probate Court had plenary power within the exercise of its limited jurisdiction. The

power could be exercised on equitable as well as legal grounds. Clapp v Banking Co., 50 Oh St, 528, 537; Brown, Exr. v. Reed, 56 Oh St, 264, 272; Trumpler v Royer, 95 Oh St, 194, 198; Fidelity & Deposit Co. v Wolfe, 100 Oh St, 332, 337. The exercise of such plenary power, especially in equity, was founded on the constitutional grant of jurisdiction (Art. IV, Sec. 8) in certain proceedings. 11 O. Jur., pp. 847, 851.

Thus, in proceedings in which jurisdiction was conferred by the constitution, the court had plenary power before the passage of the Probate Code and, in proceedings in which jurisdiction has been conferred by legislative enactments, the court may exercise plenary power under the provisions of §10501-53 GC, "unless the power is expressly otherwise limited or denied by statute."

Under the constitutional provision which gave the legislature the power to confer on the Probate Court "such other jurisdiction, in any county or counties, that may be provided by law," the legislature conferred exclusive jurisdiction on the Probate Court in all inheritance tax proceedings, by enacting §§5339 and 5340 GC. The Probate Court, therefore, has jurisdiction of the subject-matter. Such a matter is "properly before the court" within the provisions of §10501-53 GC. This court, therefore, has "plenary power at law and in equity fully to dispose of" such matter, "unless the power is expressly otherwise limited or denied by statute."

Is the plenary power of the Probate Court in this case "expressly otherwise limited or denied by statute" by reason of the provisions of §5339 GC which restrict the right of a taxpayer to a refund to cases in which other debts have been proven against the estate after the determination has been made? We do not think so. It may be contended that since the statute provides for a refund of inheritance taxes only in those cases where additional debts are found to exist, it is implied that the court is powerless to give relief on any other ground. Conceding the point to be well taken, the limitation or denial of the power of the court by implication is not sufficient to deprive the court of the exercise of its plenary power otherwise conferred by §10501-53 GC. This power cannot be taken from the court unless it is **expressly** otherwise **limited or denied** by statute."

We have searched the Probate Code and elsewhere in the statutory law of Ohio, and find no statutory provision **expressly limiting or denying** the Probate Court the right to exercise its equitable powers in a situation such as is presented in the case at bar. Section 5339 GC affords a remedy in certain cases, but this legal remedy does not exclude a remedy on equitable grounds in a proper case. Specifically, the court concludes that §5339 GC does not expressly otherwise limit or deny the power of the Probate Court to hear and determine an ap-

plication for a refund on equitable grounds.

While it is true that the Probate Court is a court of limited jurisdiction, the limitation chiefly relates to the subject-matter. Once when the court finds it has jurisdiction of the subject-matter, in the consideration of the issues involved, in a proper case, it has conferred upon it and may exercise equity power as broad and complete as that exercised by the Court of Common Pleas.

The court comes now to consider whether the Probate Court, in the exercise of its plenary equity powers in this cause should, under the facts and circumstances in this case, set aside its former order and order a refund of the overpaid inheritance taxes. A court in the exercise of its equitable powers will vacate or modify its orders or judgments obtained through a mistake of fact, as readily as on the ground of fraud. The courts have universally held to this principle. See Vol. 34 C. Jur., p. 290; Vol. 15 R. C. L. p. 752; **Vol. 23 O. Jur., p. 1279.**

While relief may be granted in a suit in equity, a separate suit is not required; relief may be granted in the same proceedings. Vol. 31 Am. Jur. pp., 213, 266, 268; **Vol. 23 O. Jur., p. 1154; Gill v Pelkey, 54 Oh St, 348, 363, 364; Goby v Minerva Engine Co., 3 Abs 586;** See also **Parsons v Ohio Pail Co., 6 C. C. (N.S.), 116,** affirmed **W. O. 74 Oh St., 464.**

A proceeding to vacate or set aside an order or judgment filed in the original suit is not an action in equity, although equitable in character and the relief is granted upon equitable terms. Vol. 31 Am. Jur., p. 268; **Vol. 23 O. Jur., p. 1155.**

Applying the usual test that equity will grant relief when the injustice which would otherwise be worked is of such gravity as to shock the conscience of the chancellor, the applicant in this case should be granted relief. Relief on equitable principles is predicated on the assumption that there is no adequate remedy at law, but that there are rights which need to be protected and wrongs which need to be righted; which a court of equity alone can remedy. The facts and circumstances in the instant case are such that the court. acting upon equitable principles, should set aside the former order determining the tax and order a refund of the overpaid inheritance tax.

The court orders $191.52, which represents the overpayment of inheritance taxes, to be refunded; that Arthur W. Meyer, the residuary legatee and devisee under the will of the decedent, is entitled to the entire refund; that the State of Ohio and the City of Dayton each are ordered to refund fifty per cent of the above amount.

An entry may be drawn accordingly. The costs of this proceeding are taxed against the estate.