## MAIMONE, Plaintiff-Appellant, v. MAIMONE, Defendant-Appellee.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21316. Decided December 19, 1949.

A. R. Fioretti, Cleveland, for plaintiff-appellant.
Ralph R. Levinson, Steubenville, for defendant-appellee.

**OPINION**

By McNAMEE, J.:

This appeal on questions of law by the plaintiff husband presents important issues relating to the trial and disposition of contested actions for divorce. The record before us does not include a bill of exceptions of the proceedings at the original trial but does contain the bill of exceptions setting forth the arguments of counsel and statements of the trial court made at the hearing upon plaintiff's motion for a new trial. From this record the following facts appear:

Plaintiff and defendant were married in October, 1926. Three children, all of whom were minors at the times herein mentioned, were born as the issue of the marriage. On March 15, 1948 plaintiff filed a petition for divorce. On March 22, 1948, defendant filed her answer and cross-petition for divorce, alimony, support and custody of the minor children. On April 12, 1948 plaintiff filed a pleading designated as "Reply and Answer." While the case was pending in its regular order on the docket of common pleas court, counsel who then represented defendant, decided to move to California and take up his residence in that state. For this reason defendant's counsel sought and obtained an advancement of the case for trial. Accordingly on the 11th day of October, 1948, the case was assigned for trial and both parties with their counsel appeared in court prepared to contest the issues made by their respective pleadings. Thereupon as related by the trial judge at the hearing on the motion for new trial the following occurred:

"(By trial judge:) The case came into the room and following the practice that I have, I called, noting that each side petitioned for a divorce, that is to say, a petition for a divorce and a cross-petition for a divorce, we called counsel in and said to them that in my experience when—I asked whether both parties wanted to be divorced and they told me that they did and that there was no possibility of a reconciliation, and I told them that if the case went to trial the probability was, from my experience, that no divorce would be granted by me to either side, inasmuch as I do follow the

law in contested cases and the law is that one side or the other must make out that the opposite side was the one who was the cause of the marital disagreement and that the other side was without fault and that evidence is very seldom produced. I said if a divorce was refused the parties would be in a very difficult situation, being married and unable to get along with one another, and suggested that they discuss the possibility—I asked them what the controversy was about, if both sides wanted a divorce and they informed me that it was on the question of alimony and I suggested that they retire and discuss that question and if that could be settled between them then one side or the other could withdraw the petition or cross-petition and the divorce could be granted.

They discussed the matter for at least an hour and then told the Court that they had arrived at a conclusion and the petition was withdrawn and the case was heard on the cross-petition." * * *

Thus it appears that acting upon the suggestion of the trial court the parties and their counsel conferred at length and then advised the court that they had agreed upon a division of property and a settlement of the claims for alimony and support. Pursuant to the suggestion made, plaintiff dismissed his petition and the defendant was permitted to proceed in an exparte hearing upon her cross-petition. Defendant was granted a decree of divorce embodying the agreement of the parties in relation to the alimony and a division of the property.

A few days thereafter, and with the consent of the attorneys who represented him at the trial, plaintiff engaged his present counsel with a view of obtaining a rehearing and an opportunity to testify in the case. Present counsel for plaintiff attempted without success to intervene in his client's behalf before the signing and filing of the divorce decree. The journal entry was signed and filed on October 19, 1948. Two days thereafter, not being certain whether the journal entry had been filed for record, counsel for plaintiff filed two motions,—(1) asking the court to vacate its calendar entries in the case, and (2) requesting the court to vacate the decree. In support of these motions, plaintiff asserts that he is unfamiliar with the English language and that at the time of trial he did not fully comprehend the nature and effect of the agreement suggested by the court. Accompanying each of his motions is the affidavit of plaintiff reciting "that he was confused and bewildered at the time he gave his assent

to withdrawing his petition and other arrangements and that he did not fully understand same and that in the interest of justice the case should be reinstated for trial on the merits."

Meanwhile, original counsel for defendant had moved to California and when the motions of plaintiff came on for hearing both parties were represented by counsel who were not present at the trial.

Both motions were treated by the court as tantamount to a single motion for new trial. They will be so considered upon this appeal. The trial court heard arguments on the motion from counsel for both parties and then made the statement hereinabove quoted. Plaintiff offered to testify in support of his motion but the court refused to hear him. At the hearing on the motion it was contended vigorously by counsel for plaintiff that his client's deficient knowledge of the English language and his "confusion and bewilderment" caused him to misapprehend the effect of the agreement he had made at the suggestion of the court. Counsel for defendant argued that plaintiff's motion was an effort to secure a modification of that part of the agreement relating to the division of property and alimony but there is nothing in the record that supports defendant's assumption in this regard. In his motion and affidavit plaintiff made no direct reference to the financial aspects of the settlement and his counsel expressly disclaimed any purpose to obtain a modification of the decree. Plaintiff made no claim that he had been misled or deceived by his former counsel. The trial court held that by reason of the absence of such a claim plaintiff's motion was not based upon any of the statutory grounds for a new trial and that the court was without authority to grant the relief sought. The trial court also expressed the view that plaintiff was bound absolutely by the agreement he had made.

The action of the trial court in overruling plaintiff's motion for new trial is one of the grounds of error upon which plaintiff appeals. He also complains that serious error intervened at the original trial in the action of the trial judge in suggesting that the parties agree upon an ex parte hearing in order to permit one of them to procure a divorce. Further error is predicated on the alleged failure of the trial court to examine and inquire into the fairness of the agreement of the parties in respect of alimony and division of property.

By his affidavit plaintiff directed the court's attention pointedly to the fact that he was a confused and unwilling collaborator in a plan that had for one of its objects the procurement of a divorce by the suppression of evidence. Had

plaintiff and defendant secretly conceived and executed an agreement to suppress evidence so that either of them might obtain a divorce they would have been guilty of perpetrating a fraud upon the court by their collusive conduct. Such an agreement openly arrived at is no less repugnant to the settled policy of the law. The evil of collusion lies not alone in its secrecy but in the suppression of evidentiary facts which ought to be examined by the court and without which no true judicial determination of a party's right to a divorce can be made.

"Collusion is a conspiracy of the husband and wife to obtain a divorce by suppression of the facts or by false and manufactured testimony." **14 O. Jur. page 406, Section 25.**

A succinct definition of collusion appears in Stewart v. Stewart 93 N. J. Eq. 1, 114 Atl. 851 as follows:

"Collusion includes any agreement between the parties as a result of which no defense shall be made to the dissolution of the marriage tie which would not otherwise be dissolved."

From the time the legislature vested jurisdiction of divorce in the judicial branch of the government, the supreme court of the state repeatedly has denounced and warned against collusive decrees.

**Paragraph 1** of the syllabi in **Stoutenberg v. Lybrand, 13 Oh St 228** reads:

"1. An agreement that a defendant in a proceedings for divorce shall withdraw his or her papers and make no defense in the case, is against public policy and therefore void; and a promissory note executed in consideration and pursuance of such agreement is without valid consideration."

In **Tucker v. Tucker, 143 Oh St** at page 660, Judge Williams speaking for the Supreme Court said:

"One of the aims of those protective enactments is the prevention of collusion between the parties. The court will always scan waiver of process, entry of appearance, with-

drawal of answer, consent to a trial without contest, and like steps in determining whether in the light of all the circumstances collusion exists between the parties and will dismiss the action when collusive conduct is shown. * * *"

And in **State ex rel Haun v. Hoffman, 145 Oh St 31,** Judge Zimmerman expressed the unanimous view of the Supreme Court as follows:

"Because of the interest of the public in the preservation of the marital status, divorce suits are accorded different treatment from ordinary civil actions, and it becomes the duty of the court in such cases to be vigilant against collusion and to see that there is compliance with the applicable statutes. **14 O. Jur., 377, Section 3;** 20 Ann. Cas. 341; Divorce of course is entirely a statutory matter."

It is inconsistent with the duty of judicial vigilance against collusion for a trial court to advise or encourage the withdrawal of one of the parties to a contested action for divorce to permit the other party to obtain a decree in an ex parte hearing. It is not the business of courts to facilitate the procurement of divorce decrees. The function of a trial court in divorce actions is to hear all the evidence and determine whether a true case for divorce has been made upon one or more of the grounds set forth in the statute. This does not mean that a party to a divorce action may not withdraw a pleading where he or she is unable to support the allegations thereof by evidence, or for other proper reasons. Neither does it mean that a party may not refuse to assert a meritorious defense. The law cannot compel parties to defend actions. But the law does forbid a husband and wife from altering their legal relations by contract "except that they may agree to an immediate separation and make provision for the support of either of them and their children during the separation." §8000 GC.

A husband and wife may not agree upon a divorce nor may they agree that either of them shall obtain a divorce upon a partial presentation of facts in an uncontested hearing. Because of the importance of the subject it may not be inappropriate to restate at length the most recent declaration of the Supreme Court in respect of the public policy of the state with regard to divorce.

In **Calvert v. Calvert, 130 Oh St** at page **376,** the Court said:

"Gathered from all the statutes, the legislative intent was plainly to give expression to well recognized legal policy. The state is concerned in the administration of justice in divorce cases and in every such case there is involved a question of public policy. Marriage is the foundation of society, and out of the nuptials there arises a social status. Marriage is therefore more than a mere contract, and to many, due to their religious belief, and the nature of the marriage ceremony, it is a sacrament. The policy of the law is to fully protect the institution of marriage, by decree of court, against dissolution through fraud, collusion or connivance or without full opportunity for investigation and hearing * * *."

It has been suggested that the law against collusive decrees is more honored in its breach than in its observance. We are told in argument that the enormous number of divorce cases on the docket of the Common Pleas Court and the multitude of complex social problems arising therefrom make necessary the adoption of short cut measures to insure the efficient and prompt disposition of pending cases. We answer these arguments by asserting that it is our duty to declare and apply the law as we find it. Also, it is the duty of this court and of courts of original jurisdiction to uphold the public policy of the state as declared in the authoritative pronouncements of the Supreme Court. Any action of a trial court calculated to subvert that policy is an abuse of discretion.

In a strict technical sense, the trial judge was correct in asserting that plaintiff's motion was not based upon any of the statutory grounds for new trial. No reference was made therein to any "irregularity in the proceedings" or "an abuse of discretion of the trial judge" both of which grounds appear in the record and both of which are among those specified in §11576 GC. But the statutory grounds for a new trial are not exclusive. Where the ends of justice imperatively require it, courts in the exercise of their inherent powers may grant new trials on other than statutory grounds upon motion filed within term. **30 O. Jur., 31, Section 3.** Brenzinger v. American Exchange Bank, 19 O. C. C. 536, affirmed in **66 Oh St 242. Hunkler v. Mathews 13 Abs 543.**

An excellent statement of this principle as applied to divorce cases is found in 17 American Juris. 371, Section 451 as follows:

"All courts of record possess inherent powers to set aside or vacate their own judgments, orders and decrees at the

term at which they were rendered. Accordingly a court which grants a decree of divorce has inherent power exercisable at its judicial discretion, either upon its own motion or upon an application of a party to the divorce proceeding, for good cause and upon due notice to open, vacate or set aside a divorce decree at any time during and before the end of the same term. It has this power as a part of its necessary machinery, for the due administration of justice."

Plaintiff is not seeking relief from a collusive compact with the defendant. If he were, there would be reason for denying it. **Fultz v. Fultz, 19 Abs 331.** Plaintiff claims that without understanding its full effect, he acquiesced in a plan that denied him his day in court. His affidavit supporting this claim is unimpeached. It is no answer to say that he acted upon advice of counsel. Neither counsel nor the court may author or advise an agreement between parties to a divorce action that contravenes the settled public policy state. The consequences of such an agreement are no less mischievous than those resulting from a collusive agreement between the parties. It would be a strange anomaly of logic and policy that would approve such an agreement when openly arrived at but condemn it as a fraud upon the court if consummated secretly by the parties.

For the reasons above stated, we hold that the trial court erred in suggesting an agreement between the parties that among other things contemplated a withdrawal of one of them from the contest to permit the procurement of a decree of divorce by the other. Also that the trial court was in error in overruling plaintiff's motion for a new trial. While it is not claimed, nor does it appear, that the agreement of the parties in respect of alimony, support and division of property is unfair, we reaffirm the well settled rule that in actions for divorce it is the duty of the trial court to determine whether such agreements are fair before permitting their incorporation into a decree of divorce.

Accordingly, this case is reversed and remanded with instructions to grant plaintiff's motion for a new trial and for further proceedings according to law. Exceptions noted. Order see journal.

SKEEL, PJ, HURD, J, concur.