Van DeRyt, Appellee, *v.* Van DeRyt, Appellant.

(No. 39594—Decided March 30, 1966.)

34

*Messrs. Gilday & Gilday* and *Mr. Bernard J. Gilday, Jr.,*
for appellee.

*Messrs. Taft, Lavercombe & Fox* and *Mr. Robert R. Laver-combe,* for appellant.

HERBERT, J.  Although the record may read like a comedy to some, to those who esteem the integrity of the administration of justice and the sanctity of marriage the record unravels a tragic story.

The spectre of collusion lurks beyond the page corners of the record, eluding definite proof.  The case at bar, in our day, justifies the following perceptive statement of Judge Hitchcock in *Harter* v. *Harter* (1832), 5 Ohio 318, 319:

"Perhaps there is no statute in Ohio more abused than the statute concerning 'divorce and alimony.'  Perhaps there is no statute under which greater imposition. is practiced upon the court, and more injustice done to individuals.  It seems to be considered by a great portion of our community, that the mar-

riage contract is the least obligatory of all others [*sic*], and that nothing more is necessary to dissolve it than that application should be made to this court [the Supreme Court, prior to 1843, had exclusive divorce jurisdiction], to register a decree to this effect.''

The law of Ohio now is, of course, to the contrary, Section 3105.01, Revised Code, but the widespread attitude of disregard for the marriage contract is still a grave cause of concern.

These well-known facts make it incumbent on a trial court to be vigilant in its regard for the legislated divorce policy of this state. Judge Zimmerman, in *State, ex rel. Haun,* v. *Hoffman, Judge* (1945), 145 Ohio St. 31, 32, succinctly stated the Ohio law on this point:

''Because of the interest of the public in the preservation of the marital status, divorce suits are accorded different treatment from ordinary civil actions and *it becomes the duty of a court in such cases to be vigilant against collusion* and to see that there is compliance with the applicable statutes.'' (Emphasis added.)

The integrity of the judiciary suffers when it yields to pressures which seek to sap the strength from our statutes. If a dilution of the divorce laws is desired, the petition for change should be placed before the General Assembly and not filed with a court.

The appellant seeks a vacation of the divorce decree, after term, on the ground of irregularity in the proceedings of the trial court. Before that claim matures for our consideration, some threshold questions must be answered.

First, was appellant's failure to appeal a bar to her filing of a motion to vacate? No. The remedies of appeal and vacation are ''cumulative'' or, more precisely, ''alternative''; a party need not prosecute an appeal as a condition precedent to moving for a vacation of a judgment. *Kesting* v. *East Side Bank Co.* (1905), 14 C. C. (N. S.) 529, 530, affirmed (1907), 76 Ohio St. 591; *Buckeye State Bldg. & Loan Co.* v. *Ryan* (1926), 24 Ohio App. 481, 485. On the contrary, as *Kesting* indicates, the prosecution of an appeal may be a fatal barrier to a party seeking a vacation. See 49 Corpus Juris Secundum, Judgments,

Section 284. To interpose an "exhaustion of remedies" requirement here would withhold from a large class of litigants a significant remedy founded on a paramount concern for substantial justice.

Second, does appellant by her motion to vacate seek a statutory (Section 2325.01, Revised Code) or a common-law remedy? In Ohio, both remedies are available after term in an appropriate case, *Jelm* v. *Jelm* (1951), 155 Ohio St. 226 (paragraph two of the syllabus); *Kinsman Natl. Bank* v. *Jerko* (1925), 25 N. P. (N. S.) 445 (paragraph four of the headnotes).

Although a court does not have inherent power at common law to make substantive amendments to its judgments after term, *Botkin* v. *Commrs. of Pickaway County* (1824), 1 Ohio 375; *Critchfield* v. *Porter* (1828), 3 Ohio 518; *Reinbolt* v. *Reinbolt* (1925), 112 Ohio St. 526; it does have inherent power to vacate after term a judgment which is void *ab initio*, *Snyder* v. *Clough* (1942), 71 Ohio App. 440 (paragraph one of the syllabus), or which is voidable for fraud or collusion, *Jelm* v. *Jelm*, *supra;* 49 Corpus Juris Secundum, Judgments, Section 269. Compare 30A American Jurisprudence, Judgments, Section 633. A court has inherent power to vacate a void judgment because such an order simply recognizes the fact that the judgment was always a nullity. An illustration is fashioned where there is fraud or collusion. A court draws the power to vacate from the reason for its existence—to render justice; for where fraud or collusion is practiced on a court, the court ceases to function as a court and its judgment becomes an official stamp lent to the subversive intentions of the abusing parties. To protect its integrity, a court has inherent power to crush the fruits of fraud and collusion.

But where the court itself makes the error complained of and the judgment is effective, the reasons for the court's inherent power to vacate vanish. Protection from being "used" is no longer necessary.

In the case at bar, we see the shadow of collusion, as did the Court of Appeals. However, the appellant does not base her claim on the grounds of fraud or collusion, nor does she assert that the judgment was void *ab initio*. Therefore, appellant does not call upon the court to exercise its inherent power

to vacate, 49 Corpus Juris Secundum, Judgments, Section 266. In claiming that the trial court committed an "irregularity," the appellant is relegated to statutory provisions for vacating judgments. Compare *Quirk* v. *Quirk* (1941), 24 N. Y. Supp. 2d 937.

Third, the statutory provision for vacating a judgment after term where there has been an "irregularity in obtaining a judgment or order" is Section 2325.01 (C), Revised Code. Since the Court of Appeals and the appellee rely heavily on the equitable defense of laches, we must determine the viability of that defense and the nature of the special proceeding under Section 2325.01 (C), Revised Code.

The special proceeding to vacate a judgment on grounds of "irregularity" has its own statute of limitations of three years, Section 2325.10, Revised Code. Such special statutory proceeding is not an equitable proceeding because "the court at law" is competent "to afford the complainant, upon motion, all the relief he could obtain in a court of equity." *Critchfield* v. *Porter, supra,* at 523. See *Buckeye State Bldg. & Loan Co.* v. *Ryan, supra.* However, the "relief which is now given by courts of law, upon motion, is *equitable in its character,* extended upon *equitable terms,* and so framed as to protect the rights of one party without sacrificing or jeopardizing those of the other." *Critchfield* v. *Porter, supra; In re Estate of Vanderlip* (1943), 39 Ohio Law Abs. 314. Thus it would seem that the statutory remedy, discussed in *Critchfield,* is fortified by equitable principles, such as the doctrine of laches which appellee raises in defense.

However, "it is established that laches within the term of the statute of limitations is no defense at law," 34 American Jurisprudence, Limitation of Actions, Section 47; *cf. Stanley* v. *Stanley, Admr.* (1890), 47 Ohio St. 225, at 230. Thus, an Appellate Court. of Illinois held that laches was not a defense to a motion to vacate brought pursuant to a statute which prescribed its own limitation period of five years. *Central Cleaners and Dyers, Inc.,* v. *Schild* (1936), 284 Ill. App. 267, 1 N. E. 2d 90.

In *Buckeye State Bldg. & Loan Co.* v. *Ryan, supra,* the Court of Appeals for Clermont County said that laches was not a defense in the statutory proceeding. However, the court was

there referring to lack of diligence in the original proceeding not to lack of diligence in inaugurating the special procedure to vacate. Thus that decision merely supports our answer to the first question discussed above and does not declare Ohio's concurrence with the Illinois view.

The contrary position is taken by the courts of Minnesota. Even though the special procedure is circumscribed by a statute of limitations, laches may prevent a vacation prior to the tolling of the time. *E. g., National Council of Knights and Ladies of Security* v. *Canter* (1916), 132 Minn. 354, 157 N. W. 586; *Alexander* v. *Hutchins* (1924), 158 Minn. 391, 197 N. W. 754; *Holmes* v. *Conter* (1941), 209 Minn. 144, 295 N. W. 649. This position is in accord with the statements, quoted above, of the Ohio Supreme Court in *Critchfield* and reflects a better understanding of the legislative purpose of the special proceeding to vacate, "that of doing right and justice between the parties." The limitations on causes of action are quite unlike the limitations placed on vacations of final orders and judgments. In the former sphere, public policy unreservedly favors the redress of wrongs in the courts, Section 16, Article I, Ohio Constitution. In the latter sphere, public policy favors the finality of litigation. Since the principle of finality should be suspended only when the paramount interests of justice clearly require it, it would be inconsistent with the purpose of serving basic justice to allow a litigant purposely or inadvertently to wait three years to assert his grounds for vacation so that the passage of time and reliance on finality of judgments would work greater hardship on the opposing litigant. Thus we hold that in an appropriate case laches would be a defense even if the complaining party asserted his grounds within the time prescribed in Section 2325.10, Revised Code.

The defense of laches has played a critical role in this drama. The Court of Appeals gave three reasons for affirming the trial court's refusal to vacate. The second was the passage of nearly six months between the journalization of the divorce decree and the filing of the motion to vacate. The third was the subsequent remarriage of plaintiff husband to his recently divorced companion. These reasons are but the two essential elements of laches—the passage of time with a resulting hardship on the opposing party. 34 American Jurisprudence, Limi-

tation of Actions, Section 5; 20 Ohio Jurisprudence 2d, Equity, Sections 81 and 82.

Although in an appropriate case, laches would be a viable defense, a thorough scanning of the record fails to uncover any evidence to support the finding of hardship resulting from delay. In fact the *only* evidence in the record—a certified copy of the marriage record of plaintiff husband and his companion —shows that these "victims of delay" were married within one week of the journalization of the divorce decree. Consequently, since no one can argue (and no one has) that appellant was lax in failing to file her motion to vacate within a week, the delay in filing was not prejudicial to the plaintiff husband and his homebreaking companion. The passage of time without prejudice does not support the defense. *E. g., Russell, Admr., v. Fourth Natl. Bank* (1921), 102 Ohio St. 248, 266. Nor are the husband and homebreaker "innocent parties" to be insulated against a motion to vacate filed too late to prevent their marriage. *Jelm v. Jelm, supra,* at 243.

We are well aware that by a glance at Section 2505.31, Revised Code, this court does not ordinarily weigh the evidence. However, this court will examine the record to see if there is evidence to support a finding. *State, ex rel. Kobelt et al., Trustees, v. Baker* (1940), 137 Ohio St. 337, 340. Since there is *no evidence at all* to support a defense of laches, that defense crumbles into ashes and must be swept aside.

Now that the procedural thickets have been cleared, we face unobstructed the substantive issue presented by this case: Was there an "irregularity in obtaining judgment?" We hold that there was.

An "irregularity" which is the basis for vacation has been defined as the "want of adherence to some prescribed rule or mode of proceeding." *Ralston v. Wells* (1892), 49 Ohio St. 298, 301; Ballentine's Law Dictionary 2 Ed. 686; Bouvier's Law Dictionary 3 Rev. An irregularity is no doubt exclusive of the other bases for vacations stated in Section 2325.01, Revised Code. And its utility as a basis for vacation for up to three years indicates that it must be more serious than the ordinary appealable error from which it must be distinguished. See 49 Corpus Juris Secundum, Judgments, Section 266.

In the case at bar, the error affected the nature of the

entire trial. Appellant three times protested that she did not want a divorce. She testified that her husband was a "swell fellow," that she was "in love" with him, but that he was "in trouble."

When such protests are made by the party who has petitioned (or cross-petitioned) for a divorce, what is the trial court's duty? What is the "prescribed * * * mode of proceeding"?

The court had a duty to assure itself that appellant *in fact* wanted a divorce, for the public policy of Ohio and its sister states favors the preservation of the marriage bond, 17 Ohio Jurisprudence 2d, Divorce and Separation, Section 3; 17 American Jurisprudence, Divorce and Separation, Section 12; 27A Corpus Juris Secundum, Divorce, Section 8 b. Thus the divorce laws are strictly construed against the granting of divorces. See *State, ex rel. Haun,* v. *Hoffman, Judge, supra; Calvert* v. *Calvert* (1936), 130 Ohio St. 369; *Kennedy* v. *Kennedy* (1959), 111 Ohio App. 432; *Gilpin* v. *Gilpin* (1889), 12 Colo. 504, 511, 21 P. 612. Thus the party petitioning for a divorce is free to dismiss his case at any time prior to judgment. The Supreme Court of Indiana stated the rule very well in *State, ex rel. McNabb,* v. *Allen Superior Court No. 2* (1947), 225 Ind. 402, 75 N. E. 2d 788 (paragraph two of the syllabus): "The general rule that a party may dismiss his case without the consent of his attorney is based on public policy, and *the rule is even stronger in divorce cases,* because the home is the foundation of society and anything which tends to weaken the home is frowned upon by the law." (Emphasis added.)

Since the permanency of marriage contracts is of peculiar concern to the state, "the state is a party to every divorce and alimony proceeding and in Ohio where no provision by law is made for actual representation, the court represents the state." *Pashko* v. *Pashko* (1951), 63 Ohio Law Abs. 82 (paragraph three of the headnotes). See, *e. g., Gilpin* v. *Gilpin, supra,* at 519; 17 American Jurisprudence, Divorce and Separation, Section 13; 27A Corpus Juris Secundum, Divorce, Section 8 b. "It is the duty of the court, representing the state, * * * to guard strictly against fraud, collusion, or *imposition* when the husband or wife seeks to dissolve the bonds that bind them together." (Em-

phasis added.) *Rehfuss* v. *Rehfuss* (1915), 169 Cal. 86, 92, 145 P. 1020. See *Maimone* v. *Maimone* (1949), 55 Ohio Law Abs. 566.

Divorce is always at the option of the petitioner. It can never be imposed, even if the petitioner is clearly entitled to a divorce, for the law encourages the condoning of marital infidelities. See *Brodsky* v. *Brodsky* (1925), 164 Minn. 102, 204 N. W. 915; *Forsby* v. *Forsby* (1929), 155 Wash. 33; *Studley* v. *Studley* (1927), 141 Wash. 531, 252 P. 99; *Cohen* v. *Cohen* (1946), 73 Cal. App. 2d 330, 166 P. 2d 622; *Gilpin* v. *Gilpin, supra,* at 511; 27A Corpus Juris Secundum, Divorce, Section 8 b.

Cross-petitioner protested three times that she did not want a divorce. It thus became incumbent upon the trial court to ascertain whether Mrs. Van DeRyt *in fact* wanted a divorce. As the representative of the state, as a quasi-litigant pressing for strict application of the divorce laws, the trial court could not leave that question to conjecture. The trial court was thus remiss in its duty of representing the state. This error reflected a misconception of the trial court's role in divorce cases; such a serious error must be considered an "irregularity" making the judgment voidable and susceptible to attack under Section 2325.01 (C), Revised Code.

In view of the well-settled law as to the special nature of divorce proceedings, we hold that where substantial doubt exists that the petitioner for divorce wants a divorce, it is incumbent on the trial court to settle such doubt.

The judgment of the Court of Appeals is reversed. The motion to vacate the judgment of the Court of Common Pleas is ordered sustained.

*Judgment reversed.*

ZIMMERMAN, MATTHIAS, O'NEILL and SCHNEIDER, JJ., concur. TAFT, C. J., and BROWN, J., dissent.

TAFT, C. J., dissents from the last sentence of paragraph four of the syllabus and from the judgment, especially since the wife was at all times during the divorce proceeding represented by counsel.

BROWN, J., concurs in the foregoing dissenting opinion.