COLLEY, APPELLANT, *v.* COLLEY, APPELLEE.

[Cite as Colley *v.* Colley (1989), 43 Ohio St. 3d 87.]

(No. 88-210—Submitted March 7, 1989—Decided May 24, 1989.)

*Blakemore, Rosen, Meeker & Varian Co., L.P.A.,* and *David A. Lieberth,* for appellant.

*Michael A. Malyuk,* for appellee.

DOUGLAS, J. The sole issue in this case is whether a separation agreement, executed in 1985 and subsequently incorporated into a dissolution decree, wherein the parties agreed to the court's continuing jurisdiction over sustenance alimony payments, gave the court authority to modify alimony payments.

In Ohio, dissolution is a form of no-fault divorce where the court can terminate a marriage pursuant to the parties' joint request. In fact, a reading of R.C. Chapter 3105 reveals that mutual consent is the cornerstone of Ohio's dissolution law. *Knapp* v. *Knapp* (1986), 24 Ohio St. 3d 141, 24 OBR 362, 493 N.E. 2d 1353.

Pursuant to R.C. 3105.63, a petition for the dissolution of marriage must be signed by both spouses. The petition must be accompanied by a separation agreement agreed to by both parties which shall provide for "* * * a division of all property, alimony, and, if there are minor children of the marriage, for custody of minor children, child support, and visitation rights. * * *" R.C. 3105.63 as it existed at the time of the Colleys' separation agreement. See Am. H.B. No. 370 (136 Ohio Laws, Part II, 2452). If these conditions are met, the dissolution action then proceeds to a final hearing. Again, mutual consent is the key because if either spouse at the final

hearing is not satisfied with the terms of the separation agreement or has a change of heart about dissolving the marriage, the court must dismiss the petition. *Knapp, supra.*

The court's statutory authority to modify the terms of a marriage dissolution is granted in R.C. 3105.65(B). R.C. 3105.65(B), as originally enacted in 1974, provided in pertinent part:

"* * * The court has full power to enforce its decree, and *retains jurisdiction to modify* all matters of custody, child support, visitation, and *periodic alimony payments.*" (Emphasis added.) (135 Ohio Laws, Part II, 603, 616.)

In 1975, the General Assembly amended R.C. 3105.65(B) by deleting the words "and periodic alimony payments."[1]

Based on R.C. 3105.65(B) as amended in 1975, this court held in *McClain* v. *McClain* (1984), 15 Ohio St. 3d 289, 15 OBR 421, 473 N.E. 2d 811, syllabus, that a court of common pleas did not have jurisdiction to modify a provision for periodic sustenance alimony payments in a dissolution of marriage.

However, both *McClain* and R.C. 3105.65(B) as amended in 1975 are silent concerning the effect of the parties' agreeing to a provision for court modification of alimony payments in a separation agreement incorporated in a dissolution decree.[2]

Accordingly, we hold that under R.C. 3105.65(B), as amended effective August 1, 1975, a court may retain jurisdiction to modify alimony payments provided for in a separation agreement by parties to a dissolution where the parties have agreed to such continuing jurisdiction and the agreement has been incorporated in a decree of dissolution of marriage. With our holding, we preserve the right of these parties to have established the terms of their agreement as a predicate to their dissolution.

The seemingly contrary holdings of *McClain* and *Knapp* were premised on the fact that absent specific authority to do so, a trial court had no authority to change the agreement of the parties. Those cases, and this one, provide no reason why the sanctity of the right to contract should be disturbed. Nor does such a holding permit parties to confer jurisdiction on a court. There was nothing in the statute that prohibited the parties from seeking the assistance of the court in resolving any differences they encountered over the amount and terms of the alimony payments. Likewise, there was nothing in the statute that prohibited the court from providing that assistance if the parties agreed on such a procedure.

---

[1] R.C. 3105.65(B), as amended in 1975, provided:

"If, upon review of the testimony of both spouses, and of the report of the investigator pursuant to Civil Rules, the court approves the separation agreement and any amendments thereto agreed upon by the parties, it shall grant a decree of dissolution of marriage incorporating the separation agreement. A decree of dissolution of marriage has the same effect upon the property rights of the parties, including rights of dower and inheritance, as a decree of divorce. The court has full power to enforce its decree, and retains jurisdiction to modify all matters of custody, child support, and visitation." (136 Ohio Laws, Part II, 2451, 2452.)

[2] *Merrill* v. *Merrill* (1985), 26 Ohio App. 3d 201, 26 OBR 422, 499 N.E. 2d 13, held that a court retains jurisdiction to modify alimony payments if provided for in a separation agreement incorporated in a decree of dissolution of marriage. *Alban* v. *Alban* (1981), 1 Ohio App. 3d 146, 1 OBR 454, 439 N.E. 2d 963, also implied such a holding.

In addition, the subsequent amendment of R.C. 3105.65(B) lends further support to our holding. Amended R.C. 3105.65(B), effective May 2, 1986,[3] when read in conjunction with amended R.C. 3105.18(D)(2),[4] which became effective on the same date, states that a court retains jurisdiction to modify the amount and terms of alimony in the case of a dissolution of marriage if the court determines that the circumstances of either party have changed and the separation agreement incorporated into the dissolution decree contains a provision specifically authorizing the court to modify the amount or terms of alimony. Otherwise, the court that enters the dissolution decree does not have jurisdiction to modify the alimony amount or terms.

In summary, the parties' marriage was dissolved in 1985. The Colleys agreed in Article 6 of their separation agreement, incorporated into the dissolution decree, that the court would have continuing jurisdiction over the alimony payments. The parties also agreed on the $900 monthly alimony payment based on the expectation that appellee would continue to have gross earnings at least equivalent to the amount he was earning when the parties entered into the agreement.

Based on the language of the agreement, it is evident that the Colleys agreed that the court, under proper circumstances, could modify the alimony terms. Nothing in the law prohibited them from doing so.[5]

Accordingly, we affirm the court of appeals' decision to remand this case to the common pleas court for a determination of whether the terms of appellee's alimony obligation should be modified.

*Judgment affirmed.*

---

[3] Amended R.C. 3105.65(B), effective May 2, 1986, provides:

"If, upon review of the testimony of both spouses, and of the report of the investigator pursuant to the civil rules, the court approves the separation agreement and any amendments to it agreed upon by the parties, it shall grant a decree of dissolution of marriage that incorporates the separation agreement. A decree of dissolution of marriage has the same effect upon the property rights of the parties, including rights of dower and inheritance, as a decree of divorce. The court has full power to enforce its decree, retains jurisdiction to modify all matters of custody, child support, and visitation, and, only in accordance with division (D)(2) of section 3105.18 of the Revised Code, has authority to modify the amount or terms of alimony." (141 Ohio Laws, Part II, 3388, 3390.)

[4] Amended R.C. 3105.18(D)(2), effective May 2, 1986, provided:

"If a continuing order for periodic payments of money as alimony is entered in a divorce or dissolution of marriage action that is determined on or after the effective date of this amendment, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony unless the court determines that the circumstances of either party have changed and unless one of the following applies:

"* * *

"(2) In the case of a dissolution of marriage, the separation agreement that is approved by the court and incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony." (141 Ohio Laws, Part II, 3388, 3389.)

Subsequently, there has been a slight modification of this section, but the thrust of the section remains the same.

[5] It should be noted that modification in this case, upon proper motion and circumstances, could include an increase in amount or duration as well as a reduction.

SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., dissents.

HOLMES, J., concurring. I believe the majority has presented a correct analysis of R.C. 3105.65(B), as amended, as well as of this court's opinion in *McClain* v. *McClain* (1984), 15 Ohio St. 3d 289, 15 OBR 421, 473 N.E. 2d 811. The amendment to this statute, as noted by the majority, only spoke to the authority—or lack thereof—of the trial court (not the parties) in retaining jurisdiction to modify sustenance alimony. The majority states that the deletion of such modification authority and its retention in the areas of custody, child support and visitation implied that the legislature specifically intended "that *a court* * * * would not retain jurisdiction to modify periodic alimony payments provided for in a separation agreement incorporated in a decree of dissolution of marriage." As noted within the majority opinion, neither *McClain* nor R.C. 3105.65(B) prohibits the parties from contractually providing for future amendments to sustenance alimony payments.

In fact, *McClain* could reasonably be said to have *sub silentio* approved such contractual authority of the parties in that it cited *Alban* v. *Alban* (1981), 1 Ohio App. 3d 146, 1 OBR 454, 439 N.E. 2d 963, in which the syllabus provides as follows:

"R.C. 3105.65(B) does not confer jurisdiction upon a court of common pleas to modify periodic alimony payments provided for in a separation agreement incorporated in a decree of dissolution of marriage, *at least in the absence of a provision in the separation agreement for such modification.*" (Emphasis added.)

As to the language of the agreement utilized here, I am not fully convinced that the mere inclusion of the words "[a]ll of the provisions in this Article are subject to the continuing jurisdiction of the Court" would give to the court the power to modify the alimony provisions. It may reasonably be argued that such language, standing alone, only states the obvious, *i.e.*, that the trial court retains jurisdiction in enforcing the provisions of a dissolution agreement, per Civ. R. 75(I). However, here the parties went further, as pointed out by the majority, and agreed to give continuing jurisdiction to the court to modify the sustenance alimony provisions in the event that the husband's gross income fell below that which "he now earns as outlined in the affidavit signed by the Husband concurrent with the execution of this Separation Agreement."

There being an agreement between the parties specifically providing for future modification of sustenance alimony, the court is not prohibited from modifying its previous order in this regard. On these bases, I concur.

MOYER, C.J., dissenting. I would concur in the desirable result produced by the majority opinion if I were not constrained by the Ohio Constitution, consistent judicial pronouncements and the unambiguous Acts of the Ohio General Assembly. Because I feel so constrained, I respectfully dissent.

After reviewing the statutory history pertinent to the question of whether the trial court in this case retained jurisdiction to modify alimony payments provided for in the parties' separation agreement, the majority concludes that its holding does not permit the parties to confer jurisdiction on a court. Such a conclusion contradicts precisely what the majority has done and is unsupported by basic principles of jurisprudence that have been recog-

nized by this court and by other courts. In *Seventh Urban, Inc.* v. *University Circle* (1981), 67 Ohio St. 2d 19, at 22, 21 O.O. 3d 12, at 14, 423 N.E. 2d 1070, at 1073, this court clearly set forth the long-established principle that should have controlled the majority opinion when it observed:

"In Ohio, the judicial power of authority flows, generally, from Section 1, Article IV of the Ohio Constitution. The jurisdictional foundation for courts of common pleas, however, is set forth specifically in Section 4(B) of Article IV, as follows:

" 'The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law.'

"Thus, it can appropriately be said that courts of common pleas are 'the constitutional courts of general original jurisdiction in Ohio.' * * * So stating, however, does not answer the question herein presented. 'The constitution itself confers no jurisdiction whatever upon that court [Court of Common Pleas], either in civil or criminal cases. It is given a capacity to receive jurisdiction *in all cases,* but it can exercise none, until "fixed by law." ' (Emphasis added.) * * *

"It is clear, therefore, that the power to define the jurisdiction of the courts of common pleas rests in the General Assembly and that such courts may exercise only such jurisdiction as is expressly granted to them by the legislature. * * *'' (Citations omitted.) See, also, *Allen* v. *Smith* (1911), 84 Ohio St. 283, 95 N.E. 829; *Wheeling & Lake Erie Ry. Co.* v. *Richter* (1936), 131 Ohio St. 433, 6 O.O. 123, 3 N.E. 2d 408; *Corron* v. *Corron* (1988), 40 Ohio St. 3d 75, 531 N.E. 2d 708. Because the grant of authority lies in the legislative body, jurisdiction over subject matter generally cannot be affected by agreement or consent and is beyond the scope of the litigants to confer. *Commodity Futures Trading Comm.* v. *Schor* (1986), 478 U.S. 833; *NAACP* v. *New York* (1973), 413 U.S. 345, 353; *Weinberger* v. *Bentex Pharmaceuticals, Inc.* (1973), 412 U.S. 645, 652.

The court in *Seventh Urban, Inc., supra,* at 24, 21 O.O. 3d at 15, 423 N.E. 2d at 1074, observed a second principle that we should apply in this case when it stated:

"* * * It is equally clear that the General Assembly was cognizant of the differences between exclusive and concurrent jurisdiction. This being so, it may be reasonably presumed that had the General Assembly intended to vest exclusive original jurisdiction over forcible entry and detainer actions in municipal courts, it would have so provided.''

Here, the General Assembly first provided, then deleted, and then again provided the common pleas courts with the jurisdiction to modify periodic alimony payment awards in marriage dissolutions. Seldom do we have such a clear history of the intention of the legislature as we do in its enactment and amendment of R.C. 3105.65(B). As the majority opinion states, the original enactment granted common pleas courts the jurisdiction to modify periodic alimony payment awards in marriage dissolutions. In 1975, it deleted that provision when it expressly stated: "* * * The court has full power to enforce its decree, and retains jurisdiction to modify all matters of custody, child support, and visitation." (136 Ohio Laws, Part II, 2451, 2452.) And finally in 1986, the General Assembly expressly gave the common pleas courts jurisdiction, in accordance with division (D)(2) of R.C. 3105.18, to modify the amount or terms of alimony.

The fact that the parties may have

agreed to give the court jurisdiction to modify alimony payments should have no bearing upon the ultimate question of whether the court indeed had such jurisdiction during the time in question. To conclude that such an agreement can define jurisdiction is to give to prospective litigants the ability in myriad circumstances to determine the limits of a court's jurisdiction. One can only hope that this case will be confined to its facts.