**Gajovski v. Gajovski**
**Case No. 14118**
**Summit County, (9th)**
**Decided January 10, 1990**
[Cite as 1 AOA 336]

*Thelma C. Furry, Attorney at Law, 50 Munroe Falls Ave., #1, Munroe Falls, OH 44262 for Plaintiff. Susan M. Ehmke, Attorney at Law, 1464 Woodlake Blvd., Stow, OH 44224 for Plaintiff.*

*Paul F. Adamson, Attorney at Law, 49 S. Main St., Akron, OH 44308 for Defendant.*

BAIRD, J.

This cause came before the court upon the appeal of Sandra Lee Grace Gajovski form the trial court's order sustaining the appellee's objections to the referee's report and terminating alimony. We reverse.

The trial court issued a dissolution decree on July 1, 1986. The separation agreement incorporated into the disolution decree set forth the following alimony provision:

"* * *.

"ALIMONY: The husband agrees to pay to the wife the sum of two hundred twenty-three dollars ($223.00) per month as and for alimony, that representing the amount of the car loan due each month until it is paid on or about January 11, 1989. The wife will then retain the ownership of the vehicle free and clear of any claim of the husband.

"As and for further alimony, the husband shall pay to the wife the sum of Seventy-Five Dollars ($75.00) per week, beginning on the date of final decree of dissolution of marriage as obtained by the parties, and continuing thereafter until July 16, 1989, or until the wife dies, remarries or lives in a state of concubinage, whichever event shall first occur. Said alimony expressly constitutes a sum certain, in that husband's maximum liability for payment hereunder is subject to computation."

The alimony provision lacked any langauge to the effect that the parties had expressly agreed to the reservation of jurisdiction with the trial court to modify the amount or the duration of the alimony.

On April 29, 1988, Danny Gajovski moved to terminate his alimony payments, claiming that his ex-wife, Sandra was living in a state of concubinage. In response, Sandra moved for a contempt order requiring Danny to pay alimony arrearages in the sum of $2,032.30. Both parties filed briefs in support of their positions.

The referee recommended that Danny's motions to terminate be denied because Sandra was not living in a state of concubinage. He also recommended that Sandra should receive $2,032.30 in back support. The trial court remanded the case to the referee for an evidentiary hearing.

At the hearing, Sandra testified that shortly after the dissolution, Vicki Johnson moved into the house that at one time constituted the marital abode. It was established that Sandra is involved in a sexual relationship with Johnson. They share equally the mortgage, grocery expenses and utilities. Each woman is responsible for her own debt. In his findings of fact and conclusions of law, the referee determined that, although Sandra was involved in a lesbian relationship with Johnson, she was not living in a state of concubinage as defined by Ohio law. He recommended that judgment be rendered against Danny for unpaid alimony from July 1, 1988 to March 6, 1989.

Danny filed objections with the trial court. Refusing to address the issue of whether Sandra was living in a state of concubinage, the trail court sustained Danny's objections on the basis of changed circumstances. Alimony was terminated and it is from this order that Sandra appeals.

### ASSIGNMENT OF ERROR I

"The trial court erred in exercising jurisdiction to modify the alimony order, where the alimony order arose by agreement of the parties in a Separation Agreement, incorporated into a Decree of Dissolution of Marriage, where there was no specific reservation of jurisdiction as required by Section 3105.18(D) (2) and Section 3105.65(B) Ohio Revised Code."

Sandra claims that the trial court was without jurisdiction to modify the terms of her alimony. She refers this court to R.C. 3105.18(D) (2) in support of her position. The statute reads:

"* * *.

"(D) If a continuing order for periodic payments of money as alimony is entered in a divorce or dissolution of marriage action that is determined on or after May 2, 1986, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony unless the court

determines that the circumstances of either party have changed and unless one of the following applies:
"* * *.
"(2) In the case of a dissolution of marriage, the separation agreement that is approved by the court and incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony."

The statute is inapplicable to the present case. By its language, the statute limits the decreeing court's jurisdiction over "a continuing order for periodic payments of money as alimony". In contrast, the dissolution decree at issue contains a provision for periodic alimony payments to terminate at a definite time. Because the alimony arrangement falls outside of R.C. 3105.18(D) (2), we must look to case law to determine whether the trial court had the power to modify the alimony provision.

In *Merill* v. *Merill* (1985), 26 Ohio App. 3d 201, 202, we held that parties to a dissolution can agree to make the provision for alimony subject to the court's continuing jurisdiction. Our position was cited with approval in *Colley* v. *Colley* (1989), 43 Ohio St. 3d 87, 89 at footnote 2. In that case, the Supreme Court of Ohio held that:

"* * *.
"Under R.C. 3105.65(B), as amended effective August 1, 1975, a court may retain jurisdiction to modify alimony payments provided for in a separation agreement by parties to a dissolution where the parties have agreed to such continuing jurisdiction and the agreement has been incorporated in a decree of dissolution of marriage."
"* * *." *Id.* at syllabus.

In order to invoke the continuing jurisdiction of the court, the separation agreement must contain a reservation of jurisdiction. *In re Adams* (1989), 45 Ohio St. 3d 219, syllabus.

Danny argues that although there is no language within the alimony provision evidencing the parties' intent to have jurisdiction reserved with the court, a reservation of jurisdiction could be inferred from the general modification clause located at the end of the separation agreement. The provision provides:

"*MODIFICATION*: This Agreement shall not be altered, changed or modified, except that it be done in writing, signed by both parties, or for good cause shown, by modification of the court as it may deem just and fair."
"* * *."

The paramount concern when interpreting separation agreements is to ascertain the intent of the parties. When Sandra and Danny agreed to have the court continue its jurisdiction over child support, custody, visitation, and distribution of real property, such was expressly set forth in the respective provisions. When it came to spousal support, a grant of continuing jurisdiction to the trial court was conspiciously absent from the alimony section of the agreement. The modification provision by its exceptive language does not prohibit the parties or court from modifying the terms of the agreement but neither does it expressly grant the court authority to modify the amount or duration of the alimony as is required by Ohio law. Thus the trial court was lacking jurisdiction to modify Sandra's alimony on the grounds of changed circumstances.

The trial court did, however, have the power to enforce its decree pursuant to R.C. 3105.65(B). An aspect of the court's enforcement power is the ability of the court to ensure compliance with the terms of the dissolution agreement. See *Saeks* v. *Saeks* (1985), 24 Ohio App. 3d 67, 70. According to the separation agreement, alimony would terminate on the occurrence of any of the following events:

1. July 16, 1989 or
2. wife dies, or
3. remarries, or
4. lives in a state of concubinage, whichever occurs first.

Upon the happening of any one of these conditions, alimony terminates. Danny based his motion to terminate on the ground that Sandra was living in a state of concubinage. Thus, Danny had sought to invoke the court's enforcement powers to determine if Sandra was living in a state of concubinage, thus terminating her alimony. Instead of limiting its jurisdiction to deciding that narrow issue, the court embarked on a broad analysis of whether there was a change in circumstances warranting a modification of Sandra's alimony.

We sustain Sandra's first assignment of error on the basis that the court did not have jurisdiction to modify alimony. However, this court further determines that the trial court possessed jurisdiction to determine if alimony was terminated pursuant to its ability to enforce its own judgments.

### ASSIGNMENTS OF ERROR
"II. If the trial court had jurisdiction to modify alimony, the Trial Court erred to the prejudice of Appellant in terminating alimony without first finding that Appellant was living in a state of concubinage.

"III. Even if the Trial Court had jurisdiction to modify the alimony award and found that a state of concubinage existed, the Trial Court abused its discretion in overrulling the Referee's Reports and sustaining the objections of Appellee thereto and terminating alimony based upon changed circumstances and lack of need."

In her last two assignments of error, Sandra argues that the trial court erroneously terminated alimony on the basis of changed circumstances. She claims Danny's motion to terminate was based solely upon whether she was living in a state of concubinage. We agree and hold that the trial court must decide if Sandra is living in a state of concubinage before it can terminate her alimony.

The referee conducted a hearing on the issue of concubinage, thus, the trial court has sufficient evidence before it to rule upon the issue. Appellant's second and third assignments of error are well taken. Judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).

CACIOPPO, P. J., CIRIGLIANO, J., Concur