**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State v. Gilbert,* **Slip Opinion No. 2014-Ohio-4562.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4562

THE STATE OF OHIO, APPELLANT, *v.* GILBERT, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Gilbert,* Slip Opinion No. 2014-Ohio-4562.]**

*Criminal law—Finality of judgment—Once a defendant has been sentenced by a trial court, that court does not have jurisdiction to entertain a motion by the state to vacate the defendant's guilty plea and sentence based upon the defendant's alleged violation of a plea agreement.*

(No. 2013-0382—Submitted February 25, 2014—Decided October 21, 2014.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-110382, 2013-Ohio-238.

_____

SYLLABUS OF THE COURT

Once a defendant has been sentenced by a trial court, that court does not have jurisdiction to entertain a motion by the state to vacate the defendant's guilty plea and sentence based upon the defendant's alleged violation of a plea agreement.

_____

**O'NEILL, J.**

{¶ 1} In a plea negotiation, appellee, Kareem Gilbert, received the benefit of a bargain with the state but simply chose not to live up to his end of the deal.

{¶ 2} After he was indicted on several charges, Gilbert agreed in a plea agreement to testify against his father, Ruben Jordan, in a murder case. In exchange, some of the charges against Gilbert were amended or dismissed. The trial court proceeded to sentence Gilbert without waiting for him to testify against his father as anticipated in the plea agreement. Later, after he began serving his time in prison, he refused to testify as promised. A year after he was sentenced, the state claimed that Gilbert had breached the plea agreement by failing to give truthful testimony against his father. He was brought back to court from prison, the trial court threw out the former plea, and Gilbert entered a second plea. He was resentenced, and he then appealed to the First District Court of Appeals. That court reversed the trial court's decision, holding that the trial court did not have the authority to reconsider its own final judgment. We agree.

{¶ 3} Once the final judgment was entered and Gilbert was sentenced to prison, the trial court lost jurisdiction to vacate its judgment of conviction and to resentence Gilbert. There must be finality to a court's judgment. There is no authority for a court to revisit a sentence that has already been imposed based on a defendant's failure to fulfill his obligations under a plea agreement.

## Facts and Procedural History

{¶ 4} Kareem Gilbert was indicted by the Hamilton County Grand Jury on March 12, 2009, on two counts of aggravated murder with firearm specifications, two counts of having weapons while under disability, and one count of intimidation of a witness. On May 18, 2010, Gilbert entered into a plea agreement whereby he would plead guilty to one count of manslaughter with a firearm specification, one count of having weapons while under disability, and

one count of intimidation of a witness and be sentenced to 18 years in prison. In exchange, Gilbert agreed to cooperate with the state and testify in a murder prosecution against his father, Ruben Jordan. Gilbert was sentenced the same day to 18 years' imprisonment.

{¶ 5} On May 18, 2011, exactly one year later, the state asked the trial court to vacate Gilbert's plea because he had failed to cooperate with the state in its prosecution of Jordan. The trial court granted the request, withdrew the original plea agreement, and vacated the sentence. Based upon the trial court's action, Gilbert entered into a second plea agreement and was sentenced to imprisonment of 18 years to life. He filed a direct appeal on June 23, 2011, and subsequently filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting that there were no meritorious issues to argue. However, on March 30, 2012, the appellate court ordered briefing on the issue whether the trial court had authority to grant the state's motion to vacate Gilbert's original plea and then reconsider its own judgment and resentence Gilbert. 2012-Ohio-1366, ¶ 7-11.

{¶ 6} On January 30, 2013, the appellate court reversed the trial court's decision by a two-to-one vote. 2013-Ohio-238. Specifically, the appellate court held that the trial court did not have the authority to reconsider its final judgment after the defendant had been sentenced. The fact that the defendant had breached the plea agreement was and is irrelevant. Once the defendant was sentenced, a final order existed, and there was no authority for the trial court to revisit its judgment even though the plea agreement had been breached. The court of appeals reversed and remanded to the trial court to vacate its May 2011 order granting the state's motion to vacate the original plea and sentence and to reinstate its May 2010 sentence.

**Analysis**

{¶ 7}   The question at the center of this appeal is whether a trial court can revisit its earlier acceptance of a plea agreement and final judgment when a defendant fails to abide by the terms of that plea agreement.  The answer to this question is undoubtedly no.  The state argues that the plea agreement is a contract between the state and the defendant and that a breach of that contract requires a court to revisit the original plea and treat it as though the agreement had never been made.  While this may appear to be an equitable outcome, it simply is not supported by the law.  It would require that a trial court have jurisdiction to reconsider its own valid final judgment.

{¶ 8}   Crim.R. 32(C) lists the requirements for a valid final judgment in a criminal case.  It provides that a judgment must set forth the fact of the conviction, the sentence, the judge's signature, and the time stamp indicating that the clerk entered the judgment in the journal.  We have said that such a judgment "is a final order subject to appeal under R.C. 2505.02." *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, ¶ 1.  *See also State v. Carlisle*, 131 Ohio St.3d 127, 129, 2011-Ohio-6553, 961 N.E.2d 671, ¶ 11 (a judgment of conviction is final when it meets each of the requirements of Crim.R. 32(C)).  In the present case, the May 24, 2010 judgment of the trial court finding Gilbert guilty and sentencing him to 18 years in prison satisfied each of those four requirements.  It was, therefore, a valid final order.  Additionally, "[a]bsent statutory authority, a trial court is generally not empowered to modify a criminal sentence by reconsidering its own final judgment." *Carlisle* at ¶ 1.  This court is committed to the principle that finality creates " ' "certainty in the law and public confidence in the system's ability to resolve disputes." ' " *Miller v. Nelson-Miller*, 132 Ohio St.3d 381, 2012-Ohio-2845, 972 N.E.2d 568, ¶ 18, quoting *Strack v. Pelton*, 70 Ohio St.3d 172, 175, 637 N.E.2d 914 (1994), quoting *Knapp v. Knapp*, 24 Ohio St.3d 141, 144-145, 493 N.E.2d 1353 (1986).

**{¶ 9}** Once a final judgment has been issued pursuant to Crim.R. 32, the trial court's jurisdiction ends. While this court does not dispute the fact that contract principles generally apply to the interpretation and enforcement of plea agreements, *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 50, those principles are not so flexible to permit jurisdiction to be maintained in perpetuity to enforce such agreements.

**{¶ 10}** The state also argues that Gilbert submitted to the court's jurisdiction when he entered a second plea after he was brought back to the trial court for resentencing. But the trial court no longer had jurisdiction, and a defendant cannot waive that which does not exist. *Colley v. Colley,* 43 Ohio St.3d 87, 92, 538 N.E.2d 410 (1989) (subject-matter jurisdiction generally cannot be affected by agreement or consent). In *State v. Purnell*, 171 Ohio App.3d 446, 2006-Ohio-6160, 871 N.E.2d 613, ¶ 12 (1st Dist.), the First District Court of Appeals stated:

> The parties cannot confer by consent or acquiescence subject-matter jurisdiction on a court where it is otherwise lacking. See *Colley v. Colley* (1989), 43 Ohio St.3d 87, 92, 538 N.E.2d 410, citing *Commodity Futures Trading Comm. v. Schor* (1986), 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675; see, also, *State v. Flynt* (1975), 44 Ohio App.2d 315, 317, 73 O.O.2d 373, 338 N.E.2d 554 ("Since jurisdiction of subject matter is fixed by law, the consent of the defendant cannot create such jurisdiction").

**{¶ 11}** The state relies on numerous cases to support its argument that the trial court retains jurisdiction when a defendant breaches a plea agreement, including *Bethel; State v. Adkins*, 161 Ohio App.3d 114, 2005-Ohio-2577, 829 N.E.2d 729; and *State v. Gilroy*, 195 Ohio App.3d 173, 2011-Ohio-4163, 959

N.E.2d 19. However, in each of these cases, the defendant had not been sentenced at the time the trial court considered whether the plea agreement had been breached. Thus, each of these cases is distinguishable because the trial court's jurisdiction was not an issue. Instead, in each of these cases, the state followed the common practice of ensuring that the defendant had complied with the plea agreement prior to imposing the sentence and entering a final judgment. Should a defendant experience a change of heart and renege on a plea agreement before a sentence has been imposed, the trial court is still able to ensure that the defendant does not receive anything that he or she is not entitled to receive regarding the dismissal of any charges or a lesser sentence. There is no justification to create an exception from this standard procedure.

{¶ 12} In its second proposition of law, the state asserts that double jeopardy does not prevent the second prosecution of Gilbert. A review of the appellate court's opinion, however, reveals that it never addressed Gilbert's double-jeopardy argument but found, instead, that it was moot. It appears that the state raised this argument to preempt Gilbert's possible argument that the resentencing was prohibited by double jeopardy. It is not an affirmative argument, and based on our decision to uphold the decision of the First District Court of Appeals that Gilbert could not be reconvicted and resentenced on grounds other than double jeopardy, it is moot.

**Conclusion**

{¶ 13} Based upon the foregoing analysis, we hold that once a defendant has been sentenced by a trial court, that court does not have jurisdiction to entertain a motion by the state to vacate the defendant's guilty plea and sentence based upon the defendant's alleged violation of a plea agreement. If the trial court is concerned with the defendant abiding by the terms of the plea agreement, the solution is to postpone sentencing until after the defendant has performed the desired act. As every teacher knows, you reward the student after the desired

behavior occurs, not before. Much like teaching, plea negotiations are driven by the fact that the incentive to do the act in question disappears once the reward has been given.

{¶ 14} The judgment of the court of appeals is affirmed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LANZINGER, and FRENCH, JJ., concur.

O'DONNELL and KENNEDY, JJ., dissent.

_____

**O'DONNELL, J., dissenting.**

{¶ 15} Respectfully, I dissent.

{¶ 16} This case presents two principal issues for our consideration: one, whether a court has inherent authority to vacate a judgment in a criminal case to correct a fraud perpetrated against it by a defendant and two, whether double jeopardy bars further prosecution of that defendant. My views are that the court does have such authority and that double jeopardy does not bar further prosecution of the defendant who purported to commit fraud against the court, and who expressly waived that right.

{¶ 17} Appellee, Kareem Gilbert, perpetrated a fraud on the trial court by providing a 50-page written statement to the state and agreeing to testify truthfully about criminal violations of his father in exchange for a favorable plea to a lesser included offense and later recanting that statement. Because he did so, the court vacated his guilty plea to a lesser but included offense and the judgment of conviction. Double jeopardy is not at issue in this case, because Gilbert expressly waived this constitutional protection.

### Facts and Procedural History

{¶ 18} Around 1:00 AM on the morning of October 16, 2008, Kareem Gilbert, Bryan Austin, and Victor Davis were near the intersection of Elder and

Republic Streets in Cincinnati, Ohio. Gilbert began to argue with Austin, and Austin hit Gilbert with a meatball sub sandwich that spilled onto Gilbert's white T-shirt. Gilbert left, retrieved a handgun, returned, and shot Austin numerous times, killing him. The state alleged that Gilbert later shot and killed Davis.

{¶ 19} On March 12, 2009, a Hamilton County grand jury indicted Gilbert on two counts of aggravated murder with firearm specifications, one count of witness intimidation, and two counts of having a weapon while under disability. Gilbert pleaded not guilty to all charges.

{¶ 20} About 14 months later—on May 18, 2010—the parties entered into a plea agreement, which states:

> 2. The Defendant agrees to provide truthful, complete, and accurate information during the investigation and prosecution of any criminal offenses of which he has relevant information;
>
> 3. The Defendant agrees to testify truthfully, completely, and accurately in any legal proceeding in which he is called to testify as a witness, including but not limited to any juvenile proceeding, grand jury, or trial, whether civil or criminal in nature;
>
> 4. Specifically, the Defendant agrees to give truthful and complete testimony as a State's witness against Ruben Jordan. The Defendant states the statement he provided to the Cincinnati Police Department on May 17, 2010, regarding Mr. Jordan was truthful and complete. The Defendant additionally agrees to testify truthfully before the Hamilton County Grand Jury. * * * Furthermore, the Defendant agrees to testify concerning any criminal violations against any and all individuals targeted in these investigations resulting from cooperation. * * *

8

5. In exchange for and in consideration of the aforementioned cooperation, the Hamilton County Prosecutor's Office agrees to resolve the Defendant's pending cases in the following manner: Defendant will plea to Count one as voluntary manslaughter with a firearm specification, count two weapon under disability, and count three intimidation of crime victim/witness. The State will dismiss all remaining counts and specifications. The State would enter into an agreed prison sentence of 18 years in the Ohio Department of Corrections. The Defendant further states that he has been promised nothing in addition to that which is stated herein, and that this document fully incorporates the complete understanding of the parties;

6. The Defendant agrees and understands that completion of the terms of this agreement is to be determined by the Hamilton County Prosecutor's Office. If it is determined by the Hamilton County Prosecutor's Office that at any time the Defendant fails to cooperate fully, refuses to testify, or testifies falsely in any proceeding, intentionally gives false, misleading, or incomplete information or testimony, compromises his value as a witness, or otherwise violates any terms of this agreement, then the Hamilton County Prosecutor's Office may reinstate the original charges against the Defendant as well as any additional charges which may be appropriate. The parties will be returned to their respective positions prior to the execution of this agreement with the expressed exception that the proffer statement taken of the Defendant is admissible in the prosecution against him, as provided in Paragraph Two: (¶ 2) above. Additionally, the

Defendant specifically waives an argument of double jeopardy or speedy trial rights with regard to any charges against him.

7. The Defendant waives any Constitutional or statutory rights to a speedy trial during the life of this agreement;

8. The Defendant waives any Constitutional right against twice being placed in jeopardy with respect to any offenses that the State may prosecute if this agreement is terminated.

{¶ 21} In accordance with this agreement, Gilbert withdrew his not guilty pleas and pleaded guilty to one count of voluntary manslaughter with a firearm specification, one count of having a weapon while under a disability, and one count of witness intimidation, with the parties agreeing to an aggregate 18-year prison term. At the May 18, 2010 sentencing hearing, Gilbert specifically agreed to abide by the plea agreement. In exchange for the reduction of one aggravated murder charge to voluntary manslaughter and the dismissal of the other aggravated murder charge and a charge of having a weapon while under disability, the state represented to the court that Gilbert

agreed and entered into a written agreement with the State to provide truthful, complete, and accurate information during the investigation and to testify in the prosecution of his father, Ruben Jordan, who [was] charged with the aggravated murder of Victor Davis.

By entry dated May 24, 2010, the trial court convicted Gilbert of three offenses, dismissed two charges, and imposed the recommended sentence.

{¶ 22} Later, the state moved to vacate the plea agreement. At the hearing on its motion to vacate, it argued that Gilbert had failed to give truthful testimony

against his father. The prosecutor represented that Gilbert "recanted his 50-page—some of it—statement, especially as it pertained to Mr. Jordan, him eyewitnessing the murder of Mr. Davis and saying his father was the one that killed him. I think he said they were both at home * * * watching a football game."

**{¶ 23}** Gilbert did not object to the state's motion, and his counsel conceded that Gilbert

> broke his contract with the State by, at some point, giving incomplete information or perhaps inaccurate testimony at the time that the plea agreement was made and thereby not following through with that contract. And so, for that reason, he doesn't object to the plea being vacated, but it is his position that he gave truthful testimony during the trial against his father.

Gilbert's counsel also stated: "It is his position that he told the truth on the stand and that he had lied prior to that to the State and to the officers in order to get a better deal for himself."

**{¶ 24}** The court granted the state's motion and set aside Gilbert's plea. Pursuant to a second plea agreement, Gilbert pleaded guilty to one count of murder with a firearm specification and one count of having a weapon while under disability, with a recommended aggregate sentence of 18 years to life. The court convicted Gilbert of the two offenses and imposed the recommended sentence.

**{¶ 25}** Gilbert appealed. His counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and moved to withdraw as appellate counsel. The appellate court determined that legal points arguable on their merits remained to be resolved, granted the motion to withdraw,

appointed new counsel, and ordered briefing on whether the trial court "had authority to grant the state's motion to vacate Gilbert's pleas and to reconsider and modify its May 2010 criminal sentence, and on any other matter counsel may discover in a diligent review of the record." 2012-Ohio-1366, at ¶ 10. The court of appeals subsequently reversed the trial court judgment, determining that the trial court "lacked the authority to reconsider the May 2010 valid final judgment." 2013-Ohio-238, ¶ 21.

{¶ 26} The state appealed to this court. We accepted jurisdiction on two propositions of law raising these issues: whether, when a party breaches a plea agreement, a trial court has authority to vacate the plea and whether the double jeopardy clause barred the prosecution of Gilbert, when he "understood that if he breached the agreement the original charges could be reinstated."

**Law and Analysis**

{¶ 27} "Fraud connotes perjury, falsification, concealment, misrepresentation." *Knauer v. United States*, 328 U.S. 654, 657, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946). While Gilbert maintained that he testified truthfully at his father's trial, the record suggests that he acted fraudulently in negotiating his first plea agreement. He essentially admitted to making misrepresentations to the state as demonstrated by his attorney's statement that Gilbert gave "incomplete information and perhaps inaccurate testimony at the time that he plea agreement was made" and he "had lied * * * to the State and to the officers in order to get a better deal for himself."

{¶ 28} Gilbert also perpetrated a fraud on the trial court because, by fraudulently entering into the plea agreement, he tampered with the administration of justice and subverted the integrity of the judicial process as a whole. *See Coulson v. Coulson*, 5 Ohio St.3d 12, 15, 488 N.E.2d 809 (1983) (" 'Fraud upon the court' is an elusive concept. * * * It is generally agreed that ' * * * [a]ny fraud connected with the presentation of a case to a court is a fraud upon the

court, in a broad sense.' 11 *Wright & Miller, Federal Practice and Procedure (1973) 253, Section 2870*").

{¶ 29} A federal court has inherent power to vacate a judgment upon proof that a fraud has been perpetrated on it. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). In *Chambers*, the United States Supreme Court stated:

> This "historic power of equity to set aside fraudulently begotten judgments," *Hazel–Atlas* [*Glass Co. v. Hartford-Empire Co.*], 322 U.S. [238] at 245, 64 S.Ct. [997, 88 L.Ed. 1250 (1944)] is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner * * * involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.,* at 246, 64 S.Ct., at 1001.

{¶ 30} In the context of divorce, this court has established a trial court's authority to vacate a judgment after a party has committed a fraud upon the court. *Jelm v. Jelm*, 155 Ohio St. 226, 98 N.E.2d 401 (1951), paragraph two of the syllabus; *Van DeRyt v. Van DeRyt*, 6 Ohio St.2d 31, 36, 215 N.E.2d 698 (1966) (a court "does have inherent power to vacate after term a judgment * * * which is voidable for fraud or collusion"). In *Van DeRyt* at 36, we recognized:

> A court draws the power to vacate from the reason for its existence—to render justice; for where fraud or collusion is practiced on a court, the court ceases to function as a court and its judgment becomes an official stamp lent to the subversive

intentions of the abusing parties. To protect its integrity, a court has inherent power to crush the fruits of fraud and collusion.

{¶ 31} Notwithstanding any commitment this court may have to the principle of finality of judgments, *see* majority opinion at ¶ 8, such a pledge cannot overshadow its duty to preserve the integrity of the judicial system and "crush the fruits of fraud," *Van DeRyt* at 36.

{¶ 32} In my view, a trial court has inherent authority to vacate a judgment in a criminal case due to a fraud committed upon it, apart from its authority to reconsider a valid, final judgment when a void sentence has been imposed or when a judgment contains a clerical error.

{¶ 33} The majority's holding that once "a defendant has been sentenced by a trial court, that court does not have jurisdiction to entertain a motion by the state to vacate the defendant's guilty plea and sentence based upon the defendant's alleged violation of a plea agreement," majority opinion at ¶ 13, conflates the concepts of a court's inherent power and its jurisdiction. As early as 1896, this court recognized that there is a difference between a court's inherent power and its jurisdiction. In *Hale v. State*, 55 Ohio St. 210, 213, 45 N.E. 199 (1896), we stated:

> The difference between the jurisdiction of courts and their inherent powers is too important to be overlooked. In constitutional governments their jurisdiction is conferred by the provisions of the constitutions and of statutes enacted in the exercise of legislative authority. That, however, is not true with respect to such powers as are necessary to the orderly and efficient exercise of jurisdiction. Such powers, from both their nature and their ancient exercise, must be regarded as inherent. They do not depend upon

14

express constitutional grant, nor in any sense upon the legislative will.

{¶ 34} Article IV, Section 4(A) of the Ohio Constitution provides that there "shall be a court of common pleas and such divisions thereof as may be established by law serving each county of the state," and Section 4(B) establishes that "courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters * * * as may be provided by law." Pursuant to R.C. 2931.03, a court of common pleas "has original jurisdiction of all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas." The trial court convicted Gilbert in May 2010 in accordance with its original jurisdiction.

{¶ 35} The record shows that Gilbert did not object to the trial court's exercise of subject matter or personal jurisdiction at the hearing regarding the state's motion to vacate. " 'Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, "* * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *." ' " *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 12, quoting *State ex rel. Pizza v. Rayford*, 62 Ohio St.3d 382, 384, 582 N.E.2d 992 (1992), quoting *Sheldon's Lessee v. Newton*, 3 Ohio St. 494, 499 (1854). Because Gilbert did not challenge the trial court's exercise of jurisdiction after subject matter and personal jurisdiction were perfected, he forfeited any claim of jurisdictional error, absent plain error. Crim.R. 52(B); *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 23. However, in this case, no plain error exists because, when the trial court vacated the May 2010 judgment, it properly exercised jurisdiction of the

cause pursuant to its inherent authority and Gilbert acquiesced to its exercise of personal jurisdiction.

{¶ 36} Finally, I disagree with the majority's view that the state's argument related to double jeopardy in its second proposition of law "is not an affirmative argument * * * [and] it is moot." Majority opinion at ¶ 12. While the appellate court determined that Gilbert's assignment of error asking that court to determine whether the trial court's order violated Gilbert's constitutional protections against double jeopardy was moot, 2013-Ohio-238, ¶ 20, we accepted jurisdiction of the state's second proposition of law, which states: "The double jeopardy clause did not bar the prosecution of [Gilbert] where both parties bargained for and received substantial benefits, and [Gilbert] understood that if he breached the agreement the original charges could be reinstated." 135 Ohio St.3d 1458, 2013-Ohio-2258, 988 N.E.2d 578. The state's second proposition of law thus asserts an affirmative argument. *See Black's Law Dictionary* 70 (10th Ed.2014) (affirmative means "[s]upporting the existence of certain facts").

{¶ 37} Second, because in Gilbert's first plea agreement, he expressly waived any double jeopardy argument as to any charges against him as well as any protection from twice being placed in jeopardy relating to any offenses that the state might bring against him if the agreement were terminated, double jeopardy is not a concern in this case. *See State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 24 (a party may waive constitutional rights as long as the waiver is made knowingly and intelligently and is an intentional relinquishment of a known right).

{¶ 38} Accordingly, I would reverse the judgment of the court of appeals because a court has inherent authority to reconsider its judgment to protect the integrity of the judicial system when a defendant perpetrates a fraud upon it.

KENNEDY, J., concurs in the foregoing opinion.

_____

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Melynda J. Machol, Assistant Prosecuting Attorney, for appellant.

Ravert J. Clark, for appellee.

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association.

Michael DeWine, Attorney General, and Matthew A. Kanai, Assistant Attorney General, urging reversal for amicus curiae Attorney General of Ohio.

Timothy Young, Ohio Public Defender, and Terrence K. Scott, Assistant Public Defender, urging affirmance for amicus curiae Ohio Public Defender.

_____